1  Arthur A. Hartinger (SBN 121521)
   ahartinger@meyersnave.com
2  Reichi Lee (SBN 228578)
   rlee@meyersnave.com
3  MEYERS, NAVE, RIBACK, SILVER & WILSON
   575 Market Street, Suite 2600
4  San Francisco, California 94105
   Telephone: (415) 421-3711
5  Facsimile: (415) 421-3767

6  Attorneys for Defendants
7  CITY OF FREMONT and CRAIG STECKLER

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11  PHILLIP BROOKS,                    CASE NO. CV 07 6458

12          Plaintiff,                 **NOTICE OF MOTIONS AND BRIEF IN
                                        SUPPORT OF MOTIONS TO DISMISS**
13      v.                             **(Fed. R. Civ. P. 12(b)(6))**

14  CITY OF FREMONT, CRAIG             Date:       February 20, 2008
    STECKLER, ROBERT NELSON,           Time:       10:30 a.m.
15  CHARLES UHLER, CURTIS CODEY,       Courtroom:  C, 15th Floor
16  and Does 1-20, Inclusive,          Judge:      Honorable Edward M. Chen

17          Defendants.                Complaint Filed: November 26, 2007

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................... 1

II. STATEMENT OF PLEADED FACTS.......................................................................... 3

III. ARGUMENT ................................................................................................... 4

    A.    PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS
        TO STATE A CAUSE OF ACTION AGAINST DEFENDANT
        CHIEF STECKLER ................................................................................ 4

            1.    Plaintiff's First Cause Of Action For Racial Harassment Under
                  FEHA Fails Because Chief Steckler's Conduct Is Within The Scope
                  Of His Management Duties As Chief Of Police ............................ 5

            2.    Plaintiff's Constitutional Claims (Fourth And Fifth Causes Of
                  Action) Are Insufficiently Pleaded Against Chief Steckler ............ 6

            3.    Plaintiff's Seventh Cause of Action For Intentional Infliction Of
                  Emotional Distress Fails For Failure To Plead Outrageous Conduct
                  On The Part Of Chief Steckler ....................................... 8

            4.    Plaintiff Cannot Establish A Claim For Negligent Infliction Of
                  Emotional Distress Against Chief Steckler ....................................... 9

    B.    PLAINTIFF'S SIXTH AND SEVENTH CAUSES OF ACTION FOR
        NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
        ARE BARRED AS A MATTER OF LAW ............................................. 11

            1.    Plaintiff's Common Law Tort Claim For Negligent Infliction Of Emotional
                  Distress Is Preempted By The Exclusive Remedy Provisions Of California's
                  Workers' Compensation Law ................................................ 11

            2.    Plaintiff's Intentional Infliction Of Emotional Distress Claim Is Also
                  Preempted By Workers' Compensation Law Because The Alleged Conduct
                  Stems From Risks Normally Within The Scope Of Employment ............ 12

            3.    Both Claims Are Barred Because Public Entities And
                  Public Employees Are Immune From Liability Under The California Torts
                  Claims Act........................................................... 14

IV. CONCLUSION ................................................................................................... 16

1

# TABLE OF AUTHORITIES

2

Aquino v. Superior Court,
    21 Cal. App. 4th 847, 856 (1993)..................................................................................... 8

3

4

Arendell v. Auto Parts Club, Inc.,
    29 Cal. App. 4th 1261, 1265 (1994)............................................................................. 11

5

Becerra v. County of Santa Cruz,
    68 Cal. App. 4th 1450, 1457 (1998).............................................................................. 15

6

7

Burgess v. Superior Court,
    2 Cal. 4th 1064, 1072 (1992)........................................................................................ 9

8

9

Cochran v. Herzog Engraving Co.,
    155 Cal. App. 3d 405, 409 (1984)............................................................................... 14

10

Cole v. Fair Oaks Fire Protection Dist.,
    43 Cal. 3d 148, 155 (1987)..................................................................................... 8, 13

11

12

Davison v. Santa Barbara High School District,
    48 F. Supp. 2d 1225, 1232 (C.D. Cal. 1998) ......................................................... 15, 16

13

14

Dayton v. Modesto Irrigation Dist.,
    No. CV-F-06-1076 LJO, 2007 U.S. Dist. LEXIS 85791, at 35 (E.D. Cal. 2007)............. 10

15

Doe v. Petaluma School Dist.,
    830 F. Supp. 1560, 1583 (N.D. Cal. 1993) ................................................................... 15

16

17

Edwards v. U.S. Fidelity & Guarantee Co.,
    848 F. Supp. 1460, 1466 (N.D. Cal. 1994), aff'd, 74 F.3d 1245 (9th Cir. 1996) .............. 10

18

Fermino v. Fedco, Inc.,
    7 Cal. 4th 701, 713-14 (1994) .................................................................................... 11

19

20

Fretland v. County of Humbolt,
    69 Cal. App. 4th 1478, 1492 (1999).............................................................................. 12

21

22

Gay v. Waiters' & Dairy Lunchmen's Union,
    694 F.2d 531, 537 (9th Cir. 1982).................................................................................. 8

23

Janken v. GM Hughes Electronics,
    46 Cal. App. 4th 55, 63 (1996).................................................................................. 6, 8

24

25

Kemmerer v. County of Fresno,
    200 Cal. App. 3d 1426, 1438 (1988)....................................................................... 15, 16

26

Lee v. City of Los Angeles,
    250 F.3d 668, 686 (9th Cir. 2001).................................................................................. 6

27

Livitsanos v. Superior Court,
    2 Cal. 4th 744, 747 (1992)...................................................................................... 11, 12

28

ii

Neveau v. City of Fresno,
     392 F. Supp. 2d 1159, 1179 (E.D. Cal. 2005) ............................................ 6, 7

Peterson v. Cal. Dep't of Corr. and Rehab.,
     451 F. Supp. 2d 1092, 1100-01 (E.D. Cal. 2006)...................................... 8

Potter v. Firestone Tire & Robber Co.,
     6 Cal. 4th 965, 984 (1993)......................................................................... 9

Pacific Gas & Electric v. Morse,
     6 Cal. App. 3d 707, 714-15 (1970) ........................................................ 11

Semore v. Pool,
     217 Cal. App. 3d 1087, 1103-04 (1990) ................................................ 10

Shoemaker v. Myers,
     52 Cal. 3d 1, 15 (1990).............................................................................. 12

Village of Willowbrook v. Olech,
     528 U.S. 562, 564 (2000) ........................................................................... 7

**STATUTES**

42 U.S.C. § 1981 ..................................................................................... 2, 4, 7

42 U.S.C. § 1983 ..................................................................................... 2, 4, 6

**OTHER AUTHORITIES**

California Code of Regulations, title 2, section 7287.6, subdivision (b)(1) ..................... 5

Cal. Gov. Code § 810-935.7.......................................................................... 14

Cal. Gov. Code § 815 .................................................................................... 14

Cal. Gov. Code § 815.2(b) ............................................................................ 14

FRCP 12(b)(6).................................................................................................. 1

Labor Code § 3600 ........................................................................................ 11

Labor Code § 3602(a) .................................................................................... 11

Labor Code § 3602(b)(1)................................................................................ 11

Labor Code § 3602(b)(2)................................................................................ 11

Labor Code § 3602(b)(3)................................................................................ 11

NOTICE OF MOTIONS AND BRIEF IN SUPPORT OF                     [CV 07 6458]
MOTIONS TO DISMISS (FRCP 12(b)(6))

1              **NOTICE OF MOTIONS AND MOTIONS TO DISMISS**

2      **TO:    PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

3          **PLEASE TAKE NOTICE** that on February 20, 2008 at 10:30 a.m. or as soon thereafter

4 as the matter may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, 15th

5 Floor, Department C, San Francisco, California 94102, defendants City of Fremont ("the City")

6 and Chief of Police Craig Steckler ("Chief Steckler") will and hereby do move for a motion to

7 dismiss all or part of the Complaint for Damages for Racial Harassment, etc. (hereafter

8 "Complaint") on the grounds set forth herein.

9          Defendants' motions are based on Rule 12(b)(6) of the Federal Rules of Civil Procedure on

10 the grounds that plaintiff Phillip Brooks ("Plaintiff" or "Brooks") fails to state a claim upon which

11 relief can be granted, specifically:

12            (1)     None of the causes of actions as articulated in the Complaint state a sufficient claim

13                    against Chief Steckler; and

14            (2)     The Sixth and Seventh Causes of Action – for negligent and intentional infliction of

15                    emotional distress – fail to state a sufficient claim against the City.

16 The grounds for the motions to dismiss are more fully articulated in the accompanying brief in

17 support of the motions.

18          The motions are based on this notice of motions, the accompanying brief in support of the

19 motions, on all other pleadings and papers on file in this action, and on any oral argument that

20 may be entertained by the Court during the hearing on this matter.

21               **BRIEF IN SUPPORT OF MOTIONS TO DISMISS**

22           **I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

23          This action is brought by Phillip Brooks ("Plaintiff" or "Brooks"), an African-American

24 police officer currently employed by the City of Fremont in its Police Department. Brooks sues

25 the City, Chief Steckler, Captain Robert Nelson, Lieutenant Charles Uhler, and Sergeant Curtis

26 Codey (collectively "Defendants").

27          This action was originally filed in the Superior Court of California, County of Alameda,

28 and was removed to this Court on December 21, 2007 by defendants City and Chief Steckler on

NOTICE OF MOTIONS AND BRIEF IN SUPPORT OF                         [CV 07 6458]
MOTIONS TO DISMISS (FRCP 12(b)(6))
143317.1

1 | the basis that the Complaint includes federal claims.

2 |      These motions are made by the City and Chief Steckler only; the remaining defendants

3 | have not yet been served with process.

4 |      Brooks attempts to assert seven causes of action for:

5 |      (1) racial harassment in violation of the Fair Employment and Housing Act ("FEHA")

6 | against all Defendants;

7 |      (2) racial discrimination in violation of FEHA against the City;

8 |      (3) failure to provide a discrimination-free workplace under FEHA against the City;

9 |      (4) denial of equal protection under 42 U.S.C. § 1983 and the Fourteenth Amendment of

10 | the United States Constitution against all Defendants;

11 |      (5) denial of equal rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 against all

12 | Defendants;

13 |      (6) negligent infliction of emotional distress against all Defendants; and

14 |      (7) intentional infliction of emotional distress against all Defendants.

15 |      Plaintiff's Complaint is fraught with vague and conclusory allegations about alleged racial

16 | discrimination.   He asserts that the "majority of Fremont Police Department employees feel that

17 | the majority of African-Americans are not qualified to become police officers and/or are trouble

18 | makers...." (Compl. ¶ 11.) Plaintiff complains that although the Department has attempted to

19 | recruit "gays and lesbians," he has not seen similar efforts aimed at recruiting African-Americans.

20 | (Compl. ¶ 12.)

21 |      The vast majority of Plaintiff's complaints surround interactions relative to Plaintiff's work

22 | performance. He was "criticized" in June 1999 for not taking control of a crime scene. (Compl. ¶

23 | 16.)   His calls were "closely monitored" after he was counseled for not taking control of a

24 | complex accident scene. (Compl. ¶ 14.)  He was rated – again in 1999 – as "needs improvement"

25 | in various areas. (Compl. ¶ 24.)  The Complaint reads like a personal diary of the day-to-day life

26 | of a beat patrol officer, except that Brooks apparently attributes every criticism to his race.

27 |      The Complaint is defective on its face on numerous grounds; however, this motion will not

28 | dispose of the entire action.

2

1    First, Plaintiff does not plead sufficient facts to state a claim against Chief Steckler on

2 any ground.   By way of illustration, one of Plaintiff's complaints is that Chief Steckler presented

3 commemorative pens (for ten years of service) on a date when Brooks decided to take the day off,

4 thus delaying his receipt of the pen. (Compl. ¶ 75.)  In response to Brooks' expression of concern,

5 Chief Steckler advised that his secretary had "dropped the ball."

6    The allegations against Chief Steckler are simply insufficient to hold him personally liable

7 on any theory.   And, to the extent he took any official actions that might comprise an "adverse

8 employment action," those decision are subject to government immunities under California Law.

9    Second, Plaintiff's claim for negligent infliction of emotional distress is barred because

10 claims of injuries caused by employer negligence are squarely barred by California Workers'

11 Compensation law.

12    Finally, Plaintiff's claim for intentional infliction of emotional distress is barred by

13 California Workers' Compensation Law, as well as statutory immunities.

14    II.    **STATEMENT OF PLEADED FACTS**

15    Plaintiff is an African-American male who has been employed with the City of Fremont

16 Police Department for the past eight years (Compl., p. 1 ¶ 1.) and continues to be employed there.

17 Individual defendants Chief Steckler, Captain Nelson, Sergeant and Lieutenant Uhler, and

18 Sergeant Codey were in Plaintiff's chain of command at various points in time. (Compl., ¶ 3-6.)

19    All seven causes of action are based on a common nucleus of alleged facts.  Plaintiff

20 alleges that the Fremont Police Department is entrenched in a "good ole boy network" which has

21 created an "overly scrutinized selection process that ultimately weeds out prospective candidates"

22 and a culture in which "African-American officers who are not docile in nature" are unable to

23 advance and "racial jokes and harassment of African-American officers were permitted to flourish

24 unchecked." (Compl., ¶ 11-12.)  Nowhere in the Complaint does Plaintiff allege the factual

25 details of this alleged "overly scrutinized selection process" nor does he provide the names of

26 other African-American officers, aside from himself, who were allegedly harassed.

27    As against Chief Steckler, Plaintiff makes general allegations that Steckler somehow

28 "carefully scrutinized" his actions, declined to investigate his allegations of mistreatment, failed to

3

1   timely present him with a commemorative pen, and directed an internal investigation into an

2   incident involving Plaintiff and Sergeant Epps. (Compl., ¶ 58, 64, 75, 79.)

3       As against defendant Nelson, Plaintiff similarly asserts in a conclusory fashion that he was

4   scrutinized by Nelson and that Nelson harassed him in relation to his "injury." (Compl., ¶ 58, 73.)

5   Nowhere in the Complaint does Plaintiff allege the details of this alleged "scrutiny", "injury" or

6   harassment by Nelson; in fact, Nelson is never again mentioned in the Complaint.

7       As against defendant Codey, Plaintiff alleges that he was under Codey's "constant scrutiny

8   and harassment" (Compl., ¶ 13), that Codey chastised him on various occasions regarding his

9   handling of calls and the quality of his written work (Compl., ¶ 14, 19), that Codey gave him poor

10  performance evaluations and recommended that he not be given a regularly scheduled pay raise

11  (Compl., ¶ 24), and that Codey made inappropriate comments to him and about him to others

12  (Compl., ¶ 18, 22).

13      As against defendant Uhler, Plaintiff similarly alleges that he was under Uhler's "constant

14  scrutiny and harassment" (Compl., ¶ 13, 58), that he was subjected to "inappropriate counseling"

15  by Uhler (Compl., ¶ 44), that Uhler instructed him to attend regular team social get-togethers

16  (Compl., ¶ 45), called him "surly" (Compl., ¶ 49), suggested that he was "too high strung" and

17  "got angry too fast" (Compl., ¶ 50), and suggested that Plaintiff was having personal problems and

18  speak with the department psychiatrist. (Compl., ¶ 49.)

19      On January 11, 2007, Plaintiff filed charges of discrimination with the California

20  Department of Fair Employment and Housing ("DFEH") and received right to sue notices.

21  (Compl., ¶ 96-97.)

22              **III.    ARGUMENT**

23  **A.    PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO STATE A CAUSE OF
        ACTION AGAINST DEFENDANT CHIEF STECKLER**
24

25      Plaintiff alleges that Chief Steckler is individually liable for racial harassment under FEHA

26  (First Cause of Action), denial of equal protection and equal rights under 42 U.S.C. §§ 1981, 1983

27  (Fourth and Fifth Causes of Action, respectively) and for intentional and negligent infliction of

28  emotional distress (Sixth and Seventh Causes of Actions, respectively). Plaintiff has not alleged

---

4

1  sufficient facts to state a cause of action against Chief Steckler under *any* on these theories.

2        The Complaint contains the following allegations concerning Chief Steckler:

3        •   ". . . Plaintiff later became aware that he was being carefully scrutinized by various
members of the department's supervisors and administration personnel. The list included
4  STECKLER . . . " among others. (Compl., ¶ 58.)

5

6        •   Following a fitness for duty evaluation Plaintiff was directed to take, Plaintiff
alleges: "During subsequent conversations with STECKLER, Plaintiff told him that Plaintiff felt
7  that he had been mistreated in the department because of his race and that he had been singled out
and labeled because of race based perceptions. . . . Plaintiff asked him to order an investigation
8  into the facts surrounding the incident, but he declined to do so. STECKLER told him that
Plaintiff had been sent to the exam based on the incidents in the memo, as well as
9  information/rumors that Plaintiff was abusing alcohol, using steroids, and was a gambler. . . .
10  When Plaintiff advised STECKLER that Plaintiff didn't drink, STECKLER laughed." (Compl., ¶
64.)

11

12        •   Regarding an alleged incident involving a commemorative pen (for ten years of
service) that Plaintiff was scheduled to receive from Steckler, Plaintiff alleges: "Plaintiff did not
13  know when STECKLER was scheduled to present the pen, and had taken an off day on the day he
came to briefing. STECKLER did in fact present another officer with his pen, as well as everyone
14  else who was due for it. Normally, STECKLER makes a second visit to briefing to present the
pen to anyone who may have been off on his first attempt. STECKLER did not present his pen to
15  Plaintiff until February 15, 2007. STECKLER claimed that a secretary had dropped the ball on
16  him." (Compl., ¶ 75.)

17        •   Regarding an alleged incident between Plaintiff and another officer, Sergeant Epps,
Plaintiff alleges: "On December 18, 2006, Plaintiff received an email from Internal Affairs
18  Sergeant Mazzone. The email advised that STECKLER had directed him to conduct an
19  investigation regarding his claims that Sergeant Epps had blocked his movements following the
session on November 13, 2006." (Compl., ¶ 79.)
20
      These allegations are insufficient as a matter of law to support the claims asserted by
21
Plaintiff against Chief Steckler.
22
      **1.    Plaintiff's First Cause Of Action For Racial Harassment Under FEHA Fails
23               Because Chief Steckler's Conduct Is Within The Scope Of His Management
             Duties As Chief Of Police.**
24
25        There are no factual allegations that Chief Steckler engaged in *any* act that would
26  constitute racial harassment in violation of FEHA. California Code of Regulations, title 2, section
27  7287.6, subdivision (b)(1) provides examples of actionable harassment: verbal epithets or
28  derogatory comments, physical interference with freedom of movement, derogatory posters or

5

1  cartoons, and unwanted sexual advances. <u>Janken v. GM Hughes Electronics</u>, 46 Cal. App. 4th 55,

2  63 (1996). In <u>Janken</u>, the Court stated:

3      [H]arassment consists of conduct not necessary for performance of a supervisory job. <u>Id.</u>
       Instead, harassment consists of conduct *outside the scope of necessary job performance*,
4      conduct presumably engaged in for personal gratification, because of meanness or bigotry,
       or for other personal motives. <u>Id.</u> (emphasis added.) Harassment is not conduct of a type
5      necessary for management of the employer's business or performance of the supervisory
6      employee's job. <u>Id.</u>

7      Here, Plaintiff's allegations fail to plead facts which, if true, could legally constitute

8  harassment. First, it is clear that Chief Steckler never made any derogatory statements to Plaintiff.

9  Second, Plaintiff makes no showing whatsoever that Steckler's alleged failure to timely present

10 Plaintiff with his commemorative pen somehow rises to the level of harassing conduct FEHA is

11 meant to protect against. In fact, Plaintiff's own Complaint provides a possible reason for the

12 delay — that Steckler's assistant might have "dropped the ball." (Compl., ¶ 75.) Third, Plaintiff

13 makes the blanket accusation that Steckler "carefully scrutinized" him, but presents no facts

14 illustrating how or when this alleged "scrutiny" occurred or explain how Steckler's conduct was

15 harassing. In fact, any alleged "scrutiny" of Plaintiff's job performance, as well as the other

16 conduct alleged here — initiating and declining investigations — fall squarely within the realm of

17 Steckler's supervisory role and personnel management authority as Chief of Police. As such, the

18 First Cause of Action for racial harassment against Chief Steckler must be dismissed without leave

19 to amend.

20      **2.    Plaintiff's Constitutional Claims (Fourth And Fifth Causes Of Action) Are
              Insufficiently Pleaded Against Chief Steckler.**
21

22      Plaintiff Fourth Cause of Action under 42 U.S.C. § 1983 is premised on the allegation that

23 he was denied equal protection in violation of the Fourteenth Amendment. (Compl., ¶ 124.) To

24 state a claim under 42 U.S.C. section 1983 for a violation of the Equal Protection Clause of the

25 Fourteenth Amendment, plaintiff must show that defendant acted with an intent or purpose to

26 discriminate against the plaintiff based upon membership in a protected class. <u>Neveau v. City of</u>

27 <u>Fresno</u>, 392 F. Supp. 2d 1159, 1179 (E.D. Cal. 2005) <u>citing</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d

28 668, 686 (9th Cir. 2001). A successful equal protection claim may be brought by a "class of one,"

6

1   where plaintiff alleges that he has been *intentionally* treated differently from others similarly

2   situated and that there is no rational basis for that difference in treatment. Neveau, 392 F. Supp.

3   2d at 1179 citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (emphasis added).

4          None of Plaintiff's complaints support an equal protection claim against Chief Steckler. It

5   appears that Plaintiff premises this claim on allegations that Steckler did not investigate Plaintiff's

6   complaints about racial harassment by his peers (Compl., p.2, lines 10-12) and that on one

7   occasion Steckler came to the defense of a Caucasian officer who was the subject of a citizen's

8   complaint, whereas when citizens filed complaints against Plaintiff on three different occasions,

9   Plaintiff was subjected to "investigations." (Compl., ¶ 53-57.) Notably, Plaintiff does not allege

10  that these alleged "investigations" were initiated by Chief Steckler (rather, Sergeant Tajima-Shadle

11  initiated and carried out these investigations). (Compl., ¶ 53, 54, 55, 57.) Further, it appears that

12  at least two of these "investigations" were "informal" (Compl., ¶ 53, 54) and none of them led to

13  any punitive or disciplinary action (Compl., ¶ 53, 55, 57).

14         None of these allegations are sufficient to support an equal protection claim against

15  Steckler. First, it is unclear from the face of the pleading exactly what discriminatory conduct, if

16  any, Plaintiff is alleging against Steckler. Second, nowhere in the Complaint does Plaintiff allege

17  that Steckler's conduct towards him was *intentional* (premised on a discriminatory amicus) nor

18  does he allege that Steckler treated him differently from others who were similarly situated.

19  Third, whatever "investigations" instituted against Plaintiff (by Sergeant Tajima-Shadle or

20  otherwise) appeared to be supported by a rational basis — investigating or inquiring into citizen

21  complaints made against Plaintiff. For these reasons, Plaintiff's Fourth Cause of Action against

22  Chief Steckler must be dismissed.

23         Similarly, Plaintiff's Fifth Cause of Action against Chief Steckler must also fail for failure

24  to state a claim. Plaintiff alleges that Steckler's conduct denied him equal rights under 42 U.S.C.

25  section 1981. Section 1981 provides that all persons "shall have the same right in every State and

26  Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws and

27  proceedings for the security of persons and property as is enjoyed by white citizens. . . ." This

28  statute prohibits discrimination in the making and/or enforcement of employment contracts.

7

1  Peterson v. Cal. Dep't of Corr. and Rehab., 451 F. Supp. 2d 1092, 1100-01 (E.D. Cal. 2006).  In

2  order to establish a claim under section 1981, plaintiff must establish that (1) he is a member of a

3  racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race by

4  the defendants; and (3) the discrimination concerned one or more of the activities enumerated in

5  the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.).  Id.

6  at 1101.  Like cases brought under the Equal Protection Clause and 42 U.S.C. section 1983, a

7  prima facie case of racial discrimination under section 1981 requires proof of intentional

8  discrimination (i.e. disparate impact alone is not enough).  Gay v. Waiters' & Dairy Lunchmen's

9  Union, 694 F.2d 531, 537 (9th Cir. 1982).

10      Here, Plaintiff fails to state a claim under section 1981 because he has not alleged a

11  contractual relationship or rights under an existing (or proposed) contract that he wishes "to make

12  and enforce" nor has he alleged any other basis under which he could state this claim.  Further, as

13  already discussed above, Plaintiff has not plead any facts showing that Chief Steckler's individual

14  conduct was *intentionally* race-driven (rather, Plaintiff has pled facts indicating a rational basis for

15  the investigations — or lack thereof — instituted against him), nor facts to support that this

16  discrimination concerned the activities enumerated in the statute.  Accordingly, this claim must

17  also fail for failure to plead sufficient facts to state a claim under section 1981.

18      **3.    Plaintiff's Seventh Cause Of Action For Intentional Infliction Of Emotional
       Distress Fails For Failure To Plead Outrageous Conduct On The Part Of
19      Chief Steckler.**

20      The intentional infliction of emotional distress claim fails for two reasons.  It is well-

21  settled law that specific and intentional conduct that in and of itself is outrageous is required, and

22  causation must be shown.  Janken, 46 Cal. App. 4th at 79-80.  "Outrageous conduct" is conduct

23  that exceeds the bounds of human decency.  Id. at 80; Aquino v. Superior Court, 21 Cal. App. 4th

24  847, 856 (1993); see, e.g., Cole v. Fair Oaks Fire Protection Dist., 43 Cal. 3d 148, 155 (1987).

25  Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather

26  conduct essential to the welfare and prosperity of society.  Janken, 46 Cal. App. 4th at 80.

27      Here, the allegation that Chief Steckler "carefully scrutinized" Plaintiff is plainly

28  insufficient and the mere pleading of conduct falling within Steckler's supervisory and

1  management role (i.e. instituting and declining investigations) is insufficient to support a claim of
2  intentional infliction of emotional distress. In fact, Plaintiff cannot make a factual showing that
3  *anything* Steckler allegedly did was intentional and exceeded all bounds usually tolerated by a
4  decent society.

5        Second, Chief Steckler is entitled to immunity under the California Government Code with
6  respect to Plaintiff's IIED claim. (*See infra p. 15*.)

7        For these separate and independent reasons, Plaintiff's Seventh Cause of Action against
8  Chief Steckler must be dismissed without leave to amend.

9       **4.**    **Plaintiff Cannot Establish A Claim For Negligent Infliction Of Emotional**
                **Distress Against Chief Steckler.**
10

11        Plaintiff's negligent infliction of emotional distress claim is facially and fatally flawed on a
12  variety of grounds.

13        First, a claim of negligent infliction of emotional distress is based simply on a negligence
14  theory. <u>Burgess v. Superior Court</u>, 2 Cal. 4th 1064, 1072 (1992); <u>Potter v. Firestone Tire &</u>
15  <u>Robber Co.</u>, 6 Cal. 4th 965, 984 (1993). Thus, the traditional elements of duty, breach of duty,
16  causation, and damages apply — with the essential element being duty. <u>Burgess,</u> 2 Cal. 4th at
17  1072. Unless the defendant has assumed a duty to plaintiff in which the emotional condition of
18  the plaintiff is an object, recovery is available only if the emotional distress arises out of the
19  defendant's breach of some other legal duty and the emotional distress is proximately caused by
20  that breach of duty. <u>Potter</u>, 6 Cal. 4th at 985.

21        Here, Plaintiff claims that Chief Steckler "negligently engaged in the wrongful acts alleged
22  herein" without bothering to plead the existence of a legal duty (i.e. special relationship or a duty
23  imposed by law) or a breach of that duty. Without these elements, there is no cognizable legal
24  theory to entitle Plaintiff to some form of relief. For this reason alone, this claim must be
25  dismissed.

26        Second, Plaintiff allegations in its negligent infliction claim ("[d]efendant negligently
27  engaged in the wrongful acts described herein" (Compl., ¶ 139)) merely incorporates his prior
28  claims for intentional discrimination and intentional infliction of emotional distress — each is an

1  intentional tort. <u>See</u> <u>Dayton v. Modesto Irrigation Dist.</u>, No. CV-F-06-1076 LJO, 2007 U.S. Dist.

2  LEXIS 85791, at 35 (E.D. Cal. 2007). Intentional conduct cannot form the basis for a negligent

3  infliction of emotional distress claim. <u>Dayton</u>, No. CV-F-06-1076 LJO, 2007 U.S. Dist. LEXIS

4  85791, at 34 <u>citing</u> <u>Semore v. Pool</u>, 217 Cal. App. 3d 1087, 1103-04 (1990). In <u>Semore</u>, a

5  chemical plant employee was terminated for refusing to consent to a drug test. The court

6  sustained a demurrer to the intentional and negligent infliction of emotional distress claims,

7  finding that the supervisor's conduct in requiring the testing was a normal part of the employment

8  relationship and such supervisor conduct was necessarily "intentional." <u>Id.</u> Likewise, in <u>Edwards</u>

9  <u>v. U.S. Fidelity & Guarantee Co.</u>, 848 F. Supp. 1460, 1466 (N.D. Cal. 1994), <u>aff'd</u>, 74 F.3d 1245

10  (9th Cir. 1996), the court held that the supervisor's refusal to promote plaintiff was inherently

11  intentional and within the compensation bargain. Both cases held that intentional conduct within

12  the compensation bargain could not be the basis for the negligence action.

13          Similarly here, Plaintiff merely incorporates his prior claims for intentional discrimination

14  and intentional infliction of emotional distress into his "negligence" claim. Both <u>Semore</u> and

15  <u>Edwards</u> stand for the proposition that an intentional act cannot give rise to a claim for negligence

16  infliction of emotional distress. <u>Dayton</u>, No. CV-F-06-1076 LJO, 2007 U.S. Dist. LEXIS 85791,

17  at 35. Further, any alleged conduct by Chief Steckler stems from his supervisory role as Chief of

18  Police. <u>See</u> <u>Edwards</u>, 848 F. Supp. at 1466. Plaintiff has not plead any facts which would

19  implicate negligence of any kind on behalf of Chief Steckler. Accordingly, this claim should also

20  be dismissed on this additional ground.

21          Third, as more fully articulated below (*see infra p. 11*), claims made by employees on

22  grounds of negligence are barred by Workers' Compensation.

23          Finally, Chief Steckler is immune from actions of negligence based on the California

24  Government Code. (*See infra p. 15.*)

25          These are four separate and independent bases upon which to dismiss this claim without

26  leave to amend against Chief Steckler.

27  ///

28  ///

---

<u>10</u>

**B.    PLAINTIFF'S SIXTH AND SEVENTH CAUSES OF ACTION FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE BARRED AS A MATTER OF LAW**

    **1.    Plaintiff's Common Law Tort Claim For Negligent Infliction Of Emotional Distress Is Preempted By The Exclusive Remedy Provisions Of California's Workers' Compensation Law.**

As noted above, Plaintiff's Sixth Cause of Action for negligent infliction of emotional distress against all Defendants is premised on a negligence-based theory. Injuries suffered by employees in the workplace, caused by the negligence of their employer, are squarely preempted by California's workers' compensation law. Cal. Lab. Code § 3600 et seq. (West 2003); Livitsanos v. Superior Court, 2 Cal. 4th 744, 747 (1992) ("We hold that claims for intentional and negligent infliction of emotional distress are preempted by the exclusivity provisions of the workers' compensation law . . . . "); Arendell v. Auto Parts Club, Inc., 29 Cal. App. 4th 1261, 1265 (1994) citing Fermino v. Fedco, Inc., 7 Cal. 4th 701, 713-14 (1994) ([T]here are injuries caused by employer negligence . . . [t]hese injuries are subject to workers' compensation exclusivity). This "unmistakable declaration of legislative policy" was designed to exempt employers "from common law tort liability within the range of on-the-job negligence. Pacific Gas & Electric v. Morse, 6 Cal. App. 3d 707, 714-15 (1970).

The issue is expressly controlled by statute – Labor Code section 3602. This section provides that "[w]here the conditions of compensation set forth in section 3600 concur, the right to recover such compensation is [with certain limited exceptions], *the sole and exclusive remedy of that employee or his or her dependents against the employer . . . .* " Cal. Lab. Code § 3602(a) (emphasis added). The exceptions are limited to: willful physical assaults (§ 3602(b)(1)); fraudulent concealment of the existence of injury (§ 3602(b)(2); or injuries caused by a defective product under certain specific circumstances. (§ 3602(b)(3).) None of these exceptions apply here.

Here, the conditions of compensation unquestionably exist under Labor Code section 3600, as there is no dispute that the City and its employees are subject to workers' compensation laws: the injuries as alleged occurred during employment (Plaintiff specifically allege that he suffered "mental anguish", "emotional distress" and "harm" as a result of alleged events during his

11

1  employment (Compl., ¶ 139, 141)); and in the cause of action at issue, the injuries are alleged to

2  have been caused by the City's negligence. (Compl., ¶ 139.)  It is axiomatic that employees are

3  preempted from suing for personal injuries caused by their employers' alleged negligence.

4  Accordingly, the Sixth Cause of Action must be dismissed without leave to amend.

5  　　　　　**2.　　Plaintiff's Intentional Infliction Of Emotional Distress Claim Is Also**
　　　　　　　　**Preempted By Workers' Compensation Law Because The Alleged Conduct**
6  　　　　　　　　**Stems From Risks Normally Within The Scope Of Employment.**

7  　　　　　Under California law, workers' compensation provides employees their exclusive remedy

8  for claims of emotional distress, even if the alleged conduct is *intentional* or might be

9  characterized as egregious, *unless* the conduct stems from risks not normally within the scope of

10  employment.  Cal. Lab. Code § 3601, 3602(a); see Livitsanos, 2 Cal. 4th 744 at 747; Shoemaker v.

11  Myers, 52 Cal. 3d 1, 15 (1990) ("[A]n employee suffering emotional distress causing disability

12  may not avoid the exclusive remedy provisions of the Labor Code by characterizing the

13  employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional

14  disturbance resulting in disability.")  However, the exclusivity rule does not bar emotional distress

15  attributed to unlawful discrimination or harassment injuries outside the normal scope of

16  employment.  Livitsanos, 2 Cal. 4th at 756; Fretland v. County of Humbolt, 69 Cal. App. 4th

17  1478, 1492 (1999).

18  　　　　　Defendants are not asserting that the workers' compensation statutes bar Plaintiff's race-

19  based claims under FEHA (First, Second and Third Causes of Action).  Rather, Defendants are

20  asserting that the exclusivity doctrine bars Plaintiff's common law tort claim of intentional

21  infliction of emotional distress (Seventh Cause of Action).  Here, Plaintiff tries to avoid workers'

22  compensation preemption by cloaking his intentional infliction of emotional distress claim in

23  allegations of racial harassment and discrimination under FEHA.  However, a close look at

24  Plaintiff's allegations show that the events supporting this cause of action against each defendant

25  arose during the normal course and scope of his employment and managerial decisions related to

26  his job (i.e. disciplinary proceedings, internal investigations, criticisms of work practices, poor

27  performance evaluations, not being offered another allegedly better position, recommendation

28  against a pay raise).  These employment actions are deemed "part of the normal risk of

---

12

1  employment" and hence subject to the exclusive remedy provisions of workers' compensation law.

2  See Cole, 43 Cal. 3d at 160-61.

3          For example, as against the City, Plaintiff alleges that he was denied promotion and

4  subjected to "unwarranted disciplinary proceedings" on account of his race.  However, the *only*

5  incident in Plaintiff's entire Complaint where he implies that he was passed up for a better

6  position was an incident in early 2002 when Plaintiff tested for "several specialized positions" and

7  was offered the position of a D.A.R.E. officer. (Compl., ¶ 43.)  Plaintiff claims that "this position

8  is generally considered the least desirable of all specialized positions, and is frequently given away

9  to anyone who will take it." (Compl., ¶ 43.)  There is *nothing* in Plaintiff's Complaint alleging that

10  this decision was race-based; in fact, Plaintiff admits that he accepted this position in order "to get

11  his foot in the door of the department's administrative side." (Compl., ¶ 43.)  Nothing suggests

12  that this decision by the City was anything other than a managerial decision within the normal

13  course of Plaintiff's employment.

14          Further, the so-called "disciplinary proceedings" instituted by the City against Plaintiff –

15  fitness for duty evaluations, investigations over Plaintiff's field performance, investigations over

16  citizen complaints made against Plaintiff, and a four day suspicion that was later rescinded

17  (Compl., ¶ 53, 54, 63, 64, 69, 73, 79) – all arose from the City's legitimate right as an employer to

18  evaluate Plaintiff's on-the-job performance and conduct internal investigations over citizen

19  complaints or incidents between officers.  Thus, any alleged emotional distress arising from these

20  events are clearly barred by the workers' compensation exclusivity rule.

21          Similarly, as against Chief Steckler already discussed above, Plaintiff alleges that Steckler

22  failed to investigate his claims of discrimination and harassment, unfairly instituted an internal

23  investigation over an incident between Plaintiff and Sergeant Epps, and failed to timely present

24  Plaintiff with his commemorative pen. (Compl., ¶ 64, 75, 79.)  Not only do these alleged acts fail

25  to meet the "extreme" and "outrageous" requirement already discussed, none of these events are

26  outside the normal scope of employment and are thus barred by the workers' compensation

27  ///

28  ///

13

1     exclusivity rule.[1]

2         As the California Supreme Court explained at length in Cole: "If characterization of

3 conduct normally occurring in the workplace as unfair or outrageous were sufficient to avoid the

4 exclusive remedy provisions of the Labor Code, the exception would permit the employee to

5 allege a cause of action in every case where he suffered mental disability merely by alleging an

6 ulterior purpose of causing injury. Such an exception would be contrary to the compensation

7 bargain and unfair to the employer." Cole, 43 Cal. 3d at 160-61. Accordingly, Plaintiff's Seventh

8 Causes of Action is preempted by the workers' compensation exclusivity and must be dismissed

9 as a matter of law without leave to amend.

10        **3.**      **Both Claims Are Barred Because Public Entities And Public Employees Are**
11               **Immune From Liability Under The California Torts Claims Act.**

12         A separate basis for barring Plaintiff's Sixth and Seventh Causes of Action for negligent

13 and intentional infliction of emotional distress as against defendants City and Chief Steckler is

14 premised upon the California Torts Claims Act. Cal. Gov. Code §§ 810-935.7. First, these claims

15 must fail as against the City because there is no such thing as a cause of action for general

16 negligence against a California public entity. Government Code section 815 provides that "except

17 as otherwise provided by statute", a public entity is not liable for any injury, "whether such injury

18 arises out of an act of omission of the public entity or a public employee or any other person."

19 Cal. Gov. Code § 815. Section 815.2(b) provides that public entities are immune from injuries of

20 public employees where the employee is immune from liability. Cal. Gov. Code § 815.2(b). The

21 effect of section 815 is to abolish all common law or judicially declared forms of liability against a

22 California public entity. Cochran v. Herzog Engraving Co., 155 Cal. App. 3d 405, 409 (1984).

23 Unless there is a specific statute which operates to impose tort liability upon a public entity, no

24

_____

25 [1] The same analysis applies for Defendants Nelson, Codey and Uhler, all supervisors of Plaintiff
26 who at some point in time allegedly criticized Plaintiff's work, gave Plaintiff low marks on
performance evaluations, and/or recommended against giving Plaintiff a pay raise. (Compl., ¶¶ 13-
27 15, 18-19, 24, 58.) Nowhere in Plaintiff's Complaint suggests that any of these events giving rise
to his emotional distress arose outside the normal course and scope his employment relationship.
28

NOTICE OF MOTIONS AND BRIEF IN SUPPORT OF                [CV 07 6458]
MOTIONS TO DISMISS (FRCP 12(b)(6))
143317.1

1  such liability can exist. <u>Becerra v. County of Santa Cruz</u>, 68 Cal. App. 4th 1450, 1457

2  (1998)("[I]n the absence of some constitutional requirement, public entities may be liable only if a

3  statute declare them to be liable.").

4         For similar reasons, these claims against Chief Steckler must also fail.  Section 820.2

5  extends the same immunity for acts and omissions of a public employee, whether the employee's

6  exercise of discretion vested in them is abused.  Cal. Gov. Code § 820.2.  Further, section 821.6

7  provides immunity to a public employee who causes injury by "his instituting or prosecuting any

8  judicial or administrative proceeding within the scope of his employment, even if he acts

9  maliciously and without probable cause.  Cal. Gov. Code § 821.6.

10        Immunity for both the public entity and public employee is available on both intentional

11  and negligent tort claims, including claims for intentional and negligent infliction of emotional

12  distress.  <u>Davison v. Santa Barbara High School District</u>, 48 F. Supp. 2d 1225, 1232 (C.D. Cal.

13  1998) <u>citing</u> <u>Doe v. Petaluma School Dist.</u>, 830 F. Supp. 1560, 1583 (N.D. Cal. 1993) ("Petaluma

14  I"); <u>Kemmerer v. County of Fresno</u>, 200 Cal. App. 3d 1426, 1438 (1988).  <u>Davison</u> and <u>Kemmerer</u>

15  are on point.  In <u>Davison</u>, plaintiff alleged facts regarding peer racial discrimination and the

16  ensuing hostile educational environment against the school district and school officials.  <u>Davison</u>,

17  48 F. Supp. 2d at 1233.  In addition, she alleged facts regarding her efforts to notify and obtain

18  assistance from school officials and their refusal to take any action in response.  <u>Id.</u>  Her claim of

19  discrimination withstood the motion to dismiss, but her claims of negligence, and negligent and

20  intentional infliction of emotional distress against the school district and school officials were

21  dismissed on the grounds that those claims fell within the immunities' boundaries.  <u>Id.</u> at 1232-33.

22        Similarly, in <u>Kemmerer</u>, a civil service employee brought suit against the county and

23  individual county officials based on disciplinary proceedings instituted against him and his

24  discharge arising out of those proceedings.  <u>Kemmerer</u>, 200 Cal. App. 3d 1426.  One of the causes

25  of action was for intentional infliction of emotional distress.  The court held that each of the

26  alleged actions — disciplinary proceedings, investigations, and subsequent dismissal — were

27  within the scope of defendant employees' employment.  <u>Id.</u> at 1436-37.  In finding immunity, the

28  court commented: "[B]ecause of important policy considerations, the rule has become established

---

15

1 | that government officials are not personally liable for their discretionary acts within the scope of

2 | their authority even though it is alleged that their conduct was malicious." Id. at 1437-38.

3 |       The same considerations apply here. Plaintiff's allegations against the City and Chief

4 | Steckler all relate to valid personnel actions (or lack thereof) taken, i.e. failure to promote,

5 | prosecuting investigations and fitness for duty exams, declining to investigate. These claims are

6 | not predicated upon a statute as required by section 815 and related sections. Thus, City and Chief

7 | Steckler are entitled to immunity from the intentional and negligent infliction of emotional distress

8 | claims. Because immunity is jurisdictional, these causes of action against the City and Chief

9 | Steckler must be dismissed without leave to amend. See Davison, 48 F. Supp. 2d at 1232.

10 | **IV.    CONCLUSION**

11 |       For all the foregoing reasons, Chief Steckler respectfully requests that the Court dismiss

12 | the Complaint, and each claim contained therein, with respect to him.   The City requests dismissal

13 | of the sixth and seven claims for relief .

14 |

15 | Dated: December 31, 2007          MEYERS, NAVE, RIBACK, SILVER & WILSON

16 |

17 |                   By:_____/ s /_____

18 |                       Arthur A. Hartinger, Esq.
                      Reichi Lee, Esq.

19 |                       Attorneys for Defendants
                      CITY OF FREMONT and CRAIG STECKLER

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |