Arthur A. Hartinger (SBN 121521)
ahartinger@meyersnave.com
Reichi Lee (SBN 228578)
rlee@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, CA 94607
Telephone: 510.808.2000
Facsimile: 510.444.1108

Attorneys for Defendants
CITY OF FREMONT, CRAIG STECKLER,
ROBERT NELSON, CHARLES UHLER, and
CURTIS CODEY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP BROOKS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF FREMONT, CRAIG STECKLER, ROBERT NELSON, CHARLES UHLER, CURTIS CODEY, and Does 1-20, Inclusive,<br><br>　　　　Defendants. | CASE NO. C 07-06458 JSW<br><br>**AMENDED NOTICE OF MOTIONS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS TO DISMISS (Fed. R. Civ. P. 12(b)(6))**<br><br>Date:　April 18, 2008<br>Time:　9:00 a.m.<br>Place:　Courtroom 2, 17th Floor<br><br>The Hon. Jeffrey S. White<br><br>Complaint Filed: November 26, 2007 |

1059379.1

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT.....................................................1

II.     STATEMENT OF PLEADED FACTS ..........................................................................4

III.    STANDARD OF REVIEW ..........................................................................................5

IV.     ARGUMENT ..............................................................................................................5

      A.      PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS
            TO STATE A CAUSE OF ACTION AGAINST DEFENDANT
            CHIEF STECKLER OR CAPTAIN NELSON ON ANY THEORY.....................5

            1.     Plaintiff's First Cause Of Action Fails Because Chief Steckler
                  And Captain Nelson's Alleged Conduct Does Not Support A
                  Claim for Racial Harassment Under FEHA...................................................6

            2.     Plaintiff Does Not Plead Facts Overcoming Defendants' Immunity
                  For Discretionary Acts Within The Scope Of Their Management
                  And Supervisory Duties..................................................................................7

            3.     Plaintiff's Federal Claims (Fourth And Fifth Causes Of Action)
                  Under 42 U.S.C. Sections 1983 and 1981 Are Insufficiently Pleaded
                  Against Individual Defendants Chief Steckler And Captain Nelson...........8

            4.     Chief Steckler And Captain Nelson Are Entitled To Qualified
                  Immunity on Plaintiff's Section 1981 And 1983 Claims .............................10

            5.     Plaintiff's Seventh Cause Of Action For Intentional Infliction Of
                  Emotional Distress Fails For Failure To Plead Outrageous Conduct
                  On The Part Of Chief Steckler And Captain Nelson ..................................11

            6.     Plaintiff Cannot Establish A Claim For Negligent Infliction Of Emotional
                  Distress Against Chief Steckler And Captain Nelson.................................12

      B.      PLAINTIFF'S SIXTH AND SEVENTH CAUSES OF ACTION FOR
            NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL
            DISTRESS ARE BARRED AS A MATTER OF LAW ......................................13

            1.     Plaintiff's Common Law Tort Claim For Negligent Infliction
                  Of Emotional Distress Is Preempted By The Exclusive Remedy Provisions
                  Of California's Workers' Compensation Law .............................................13

            2.     Plaintiff's Intentional Infliction Of Emotional Distress Claim
                  Is Also Preempted By Workers' Compensation Law Because
                  The Alleged Conduct Stems From Risks Normally Within The Scope Of
                  Employment..................................................................................................14

            3.     Both Claims Are Barred Because Public Entities And Public Employees Are
                  Immune From Liability Under The California
                  Torts Claims Act...........................................................................................17

IV.     CONCLUSION ........................................................................................................19

i

1

## TABLE OF AUTHORITIES

Page

2

**CASES**

3

*Aquino v. Superior Court,*
  21 Cal. App. 4th 847 (Ct. App. 1993)...................................................................... 11

*Arendell v. Auto Parts Club, Inc.,*
  29 Cal. App. 4th 1261 (Ct. App. 1994).................................................................... 14

*Balistreri v. Pacifica Police Dept.,*
  901 F.2d 696 (9th Cir. 1990) ...................................................................................... 5

*Becerra v. County of Santa Cruz,*
  68 Cal. App. 4th 1450 (Ct. App. 1998).................................................................... 17

*Beliveau v. Caras,*
  873 F. Supp. 1393 (C.D. Cal. 1995) .......................................................................... 5

*Burgess v. Superior Court,*
  2 Cal. 4th 1064 (1992) ............................................................................................. 12

*Caldwell v. Montoya,*
  10 Cal. 4th 972 (1995) ......................................................................................... 8, 17

*Cochran v. Herzog Engraving Co.,*
  155 Cal. App. 3d 405 (Ct. App. 1984)..................................................................... 17

*Cole v. Fair Oaks Fire Protection Dist.,*
  43 Cal. 3d 148 (1987) .................................................................................. 11, 15, 16

*Davison v. Santa Barbara High School District,*
  48 F. Supp. 2d 1225 (C.D. Cal. 1998) ................................................................ 17-18

*Dayton v. Modesto Irrigation Dist.,*
  No. CV-F-06-1076 LJO, 2007 U.S. Dist. LEXIS 85791
  (E.D. Cal. November 16, 2007) .......................................................................... 12-13

*Debro v. San Leandro Unified Sch. Dist.,* No C-99-0676 VRW, 2001 U.S. Dist. LEXIS
  17388, at 5 (N.D. Cal. October 11, 2001).................................................................. 11

*Edwards v. U.S. Fidelity & Guarantee Co.,*
  848 F. Supp. 1460 (N.D. Cal. 1994), *aff'd,* 74 F.3d 1245 (9th Cir. 1996) ............... 13

*Fretland v. County of Humbolt,*
  69 Cal. App. 4th 1478 (Ct. App. 1999).................................................................... 15

*Gay v. Waiters' & Dairy Lunchmen's Union,*
  694 F.2d 531 (9th Cir. 1982) .................................................................................... 10

*Hishon v. King & Spalding,*
  467 U.S. 69 (1984)...................................................................................................... 5

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTIONS AND MPA IN SUPPORT OF
MOTIONS TO DISMISS (FRCP 12(b)(6))                      [C 07-06458 JSW]

*In re Delawarean Motor Co.,*
   991 F.2d 1236 (6th Cir. 1993) ............................................................................ 5

*Janken v. GM Hughes Electronics,*
   46 Cal. App. 4th 55 (Ct. App. 1996)............................................................. 7, 11

*Kemmerer v. County of Fresno,*
   200 Cal. App. 3d 1426 (Ct. App. 1988) ....................................................... 17-18

*Livitsanos v. Superior Court,*
   2 Cal. 4th 744 (1992) ................................................................................. 14-15

*Mory v. City of Chula Vista,*
   No. 07CV0462, 2008 U.S. Dist. LEXIS 9911 (S.D. Cal. February 11, 2008) ....... 10

*Neveau v. City of Fresno,*
   392 F. Supp. 2d 1159 (E.D. Cal. 2005)............................................................ 8

*Pacific Gas & Electric v. Morse,*
   6 Cal. App. 3d 707 (Ct. App. 1970) ............................................................... 14

*Parrino v. PHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) ......................................................................... 5

*Peterson v. Cal. Dep't of Corr. and Rehab.,*
   451 F. Supp. 2d 1092  (E.D. Cal. 2006)....................................................... 9-10

*Potter v. Firestone Tire & Robber Co.,*
   6 Cal. 4th 965 (1993) ................................................................................. 12

*Semore v. Pool,*
   217 Cal. App. 3d 1087 (Ct. App. 1990)....................................................... 12-13

*Shoemaker v. Myers,*
   52 Cal. 3d 1 (1990) ...................................................................................... 15

*Transphase Systems. Inc. v. Southern Calif. Edison Co.,*
   893 F. Supp. 711 (C.D. Cal 1993) .................................................................. 5

*Tubbesing v. Arnold,*
   742 F.2d 401 (8th Cir. 1984) ......................................................................... 11

**STATUTES**

42 U.S.C. § 1981................................................................. 2, 4, 5, 8, 9-10

42 U.S.C. § 1983................................................................... 2, 4, 5, 8, 10

Cal. Gov. Code §§ 810-935.7 (West 1995) ..................................................... 17

Cal. Gov. Code § 815................................................................................ 17-18

iii

Cal. Gov. Code § 815.2(b) ................................................................. 17

Cal. Gov. Code § 820.2 (West 1995) ............................................. 3, 8, 17

Cal. Gov. Code § 821.6 (West 1995) ................................................ 8, 17

Cal. Lab. Code § 3600 *et seq.* (West 2003) ......................................... 14

Cal. Lab. Code § 3601 ....................................................................... 15

Cal. Lab. Code § 3602 ....................................................................... 14

Cal. Lab. Code § 3602(a) .............................................................. 14, 15

Cal. Lab. Code § 3602(b) ................................................................... 14

**OTHER AUTHORITIES**

California Code of Regulations, title 2, section 7287.6, subdivision (b)(1) ................................. 6

Federal Rule of Civil Procedure 12(b)(6) .................................................. 5

Fourteenth Amendment ..................................................................... 8

1    **NOTICE OF MOTIONS AND MOTIONS TO DISMISS**

2    **TO:    PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that on April 18, 2008 at 9:00 a.m. or as soon thereafter as the

4    matter may be heard in the above-entitled Court, located at 450 Golden Gate Avenue, 17th Floor,

5    Courtroom 2, San Francisco, California 94102, defendants City of Fremont ("the City"), Chief of

6    Police Craig Steckler ("Chief Steckler"), and Captain Robert Nelson (" Captain Nelson") will and

7    hereby do move for a motion to dismiss all or part of the Complaint for Damages for Racial

8    Harassment, etc. (hereafter "Complaint") on the grounds set forth herein.

9        Defendants' motions are based on Rule 12(b)(6) of the Federal Rules of Civil Procedure on

10   the grounds that plaintiff Phillip Brooks ("Plaintiff" or "Brooks") fails to state a claim upon which

11   relief can be granted, specifically:

12       (1)    None of the causes of actions as articulated in the Complaint state a sufficient claim

13              against Chief Steckler or Captain Nelson; and

14       (2)    The Sixth and Seventh Causes of Action – for negligent and intentional infliction of

15              emotional distress – fail to state a sufficient claim against the City.

16   The grounds for the motions to dismiss are more fully articulated in the accompanying brief in

17   support of the motions.

18       The motions are based on this notice of motions, the accompanying brief in support of the

19   motions, on all other pleadings and papers on file in this action, and on any oral argument that

20   may be entertained by the Court during the hearing on this matter.

21                   **MEMORANDUM OF POINTS AND AUTHORITIES**
                     **IN SUPPORT OF MOTIONS TO DISMISS**
22

23               **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

24       This action is brought by Phillip Brooks ("Plaintiff" or "Brooks"), an African-American

25   police officer currently employed by the City of Fremont in its Police Department.  Plaintiff sues

26   the City, Chief Steckler, Captain Robert Nelson, Lieutenant Charles Uhler, and Sergeant Curtis

27

28

AMENDED NOTICE OF MOTIONS AND MPA IN SUPPORT OF                    [C 07-06458 JSW]
MOTIONS TO DISMISS (FRCP 12(b)(6))

1  Codey (collectively "Defendants").[1]

2      This action was originally filed in the Superior Court of California, County of Alameda,

3  and was removed to this Court on December 21, 2007 on the basis that the Complaint raises issues

4  of federal question. The case was initially assigned to Magistrate Judge Edward M. Chen;

5  Defendants filed a declination and the case was subsequently reassigned to this courtroom. The

6  parties have not commenced formal discovery and the first Case Management Conference hearing

7  is set for March 28, 2008 at 1:30 p.m. These motions are made by the remaining defendants: the

8  City, Chief Steckler, and Captain Nelson.

9      Plaintiff attempts to assert seven causes of action for:

10      (1) racial harassment in violation of the FEHA against all defendants;

11      (2) racial discrimination in violation of FEHA against the City;

12      (3) failure to provide a discrimination-free workplace under FEHA against the City;

13      (4) denial of equal protection under 42 United States Code section 1983 against all

14  defendants;

15      (5) denial of equal rights under 42 U.S.C. section 1981 against all defendants;

16      (6) negligent infliction of emotional distress against all defendants; and

17      (7) intentional infliction of emotional distress against all defendants.

18      Plaintiff's Complaint is fraught with vague and conclusory allegations about alleged racial

19  discrimination. He asserts that the "majority of Fremont Police Department employees feel that

20  the majority of African-Americans are not qualified to become police officers and/or are trouble

21  makers...." (Compl. ¶ 11.) Plaintiff complains that although the Department has attempted to

22  recruit "gays and lesbians," he has not seen similar efforts aimed at recruiting African-Americans.

23  (Compl. ¶ 12.)

24      The vast majority of Plaintiff's complaints surround interactions relative to Plaintiff's work

25  performance. He was "criticized" in June 1999 for not taking control of a crime scene. (Compl. ¶

26  _____

27  [1] Plaintiff has executed a stipulation to dismiss defendants Uhler and Codey with prejudice on the
    basis that the claims against them are time barred. See Stipulation, on file herein.

28

2

1  16.)  His calls were "closely monitored" after he was counseled for not taking control of a
2  complex accident scene.  (Compl. ¶ 14.)  He was rated – again in 1999 – as "needs improvement"
3  in various areas.  (Compl. ¶ 24.)  The Complaint reads like a personal diary of the day-to-day life
4  of a beat patrol officer, except that Plaintiff apparently attributes every criticism to his race.

5      The Complaint is defective on its face on numerous grounds; however, this motion will not
6  dispose of the entire action.

7      First, Plaintiff does not plead sufficient facts to state a claim against Chief Steckler on any
8  ground.  By way of illustration, one of Plaintiff's complaints is that Steckler presented
9  commemorative pens (for ten years of service) on a date when Plaintiff decided to take the day off,
10 thus delaying his receipt of the pen.  (Compl. ¶ 75.)  In response to Plaintiff's expression of
11 concern, Steckler advised that his secretary had "dropped the ball." (Compl. ¶ 75.)  The
12 allegations against Steckler are simply insufficient to hold him personally liable on any theory.
13 And, to the extent he took any official actions that might comprise an "adverse employment
14 action," those decisions are subject to government immunities under California's Torts Claim Act.

15     Similarly, Plaintiff does not plead sufficient facts to state a claim against Captain Nelson
16 on any theory.  For example, Plaintiff makes the blanket assertion that he was "being carefully
17 scrutinized by various members of the department's supervisors . . . . including Nelson . . . "
18 (Compl. ¶ 58), without specifying any facts or even a timeframe for this alleged "scrutiny".
19 Further, in his only other allegation against Nelson, Plaintiff claims that Nelson harassed him in
20 relation to a work related injury (Compl. ¶ 73), without specifying any factual detail whatsoever
21 regarding this alleged "harassment".  In fact, Nelson is never mentioned again in the Complaint.
22 These vague allegations against Nelson are plainly insufficient to provide him notice as to what he
23 is being sued for and are insufficient to hold him personally liable on any theory.

24     Second, Plaintiff's discrimination claims against Steckler and Nelson are barred under
25 California Government Code section 820.2 which provides immunity for public officials for
26 discretionary acts and omissions, even if they are alleged to be discriminatory.

27     Third, Steckler and Nelson are entitled to qualified immunity on Plaintiff's federal section
28 1981 and 1983 claims.

3

1    Fourth, Plaintiff's claim for negligent infliction of emotional distress is barred because
2  claims of injuries caused by employer negligence are squarely barred by California Workers'
3  Compensation law.

4    Finally, Plaintiff's claim for intentional infliction of emotional distress is barred by
5  California Workers' Compensation Law, as well as statutory immunities.

6             **II.    STATEMENT OF PLEADED FACTS**

7    Plaintiff is an African-American male who has been employed with the City of Fremont
8  Police Department for the past eight years (Compl. p. 1, lines 26-28) and continues to be
9  employed there.  Individual defendants Chief Steckler, Captain Nelson, Lieutenant Uhler, and
10 Sergeant Codey were in Plaintiff's chain of command at various points in time.  (Compl. ¶ 3-6.)

11   All seven causes of action are based on a common nucleus of alleged facts.  Plaintiff
12 alleges that the Fremont Police Department is entrenched in a "good ole boy network" which has
13 created an "overly scrutinized selection process that ultimately weeds out prospective candidates"
14 and a culture in which "African-American officers who are not docile in nature" are unable to
15 advance and "racial jokes and harassment of African-American officers were permitted to flourish
16 unchecked."  (Compl. ¶ 11-12.)  Nowhere in the Complaint does Plaintiff allege the factual details
17 of this alleged "overly scrutinized selection process" nor does he provide the names of other
18 African-American officers, aside from himself, who were allegedly harassed.

19   As against Chief Steckler, Plaintiff makes general allegations that Steckler somehow
20 "carefully scrutinized" his actions, declined to investigate his allegations of mistreatment, failed to
21 timely present him with a commemorative pen, and directed an internal investigation into an
22 incident involving Plaintiff and Sergeant Epps.  (Compl. ¶ 58, 64, 75, 79.)

23   As against Captain Nelson, Plaintiff similarly asserts in a conclusory fashion that he was
24 scrutinized by Nelson and that Nelson harassed him in relation to his work related injury.  (Compl.
25 ¶ 58, 73.)  Nowhere in the Complaint does Plaintiff allege the details of this alleged "scrutiny",
26 "injury" or "harassment" by Nelson; in fact, Nelson is never again mentioned in the Complaint.

27   On January 11, 2007, Plaintiff filed charges of discrimination with the California
28 Department of Fair Employment and Housing ("DFEH") and received right to sue notices.

AMENDED NOTICE OF MOTIONS AND MPA IN SUPPORT OF                [C 07-06458 JSW]
MOTIONS TO DISMISS (FRCP 12(b)(6))

(Compl. ¶ 96-97.)

### III.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim upon which relief can be granted is proper "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In ruling on a 12(b)(6) motion, the Court accepts as true all material allegations in the complaint, except for "conclusory allegations," "legal characterizations," "unreasonable inferences," or "unwarranted deductions of fact." *Parrino v. PHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *In re Delawarean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *Transphase Systems, Inc. v. Southern Calif. Edison Co.*, 893 F. Supp. 711, 718 (C.D. Cal 1993); *Beliveau v. Caras*, 873 F. Supp. 1393, 1395-96 (C.D. Cal. 1995). Dismissal can be based on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

### IV.    ARGUMENT

#### A.    PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO STATE A CAUSE OF ACTION AGAINST INDIVIDUAL DEFENDANTS CHIEF STECKLER OR CAPTAIN NELSON ON ANY THEORY

Plaintiff alleges that Chief Steckler and Captain Nelson are individually liable for racial harassment under FEHA (First Cause of Action), denial of equal protection and equal rights under 42 U.S.C. sections 1983 and 1981 (Fourth and Fifth Causes of Action, respectively), and for negligent and intentional infliction of emotional distress (Sixth and Seventh Causes of Actions, respectively). Plaintiff has not alleged sufficient facts to state a cause of action against Chief Steckler or Captain Nelson under any on these theories.

The Complaint contains the following allegations concerning Steckler:

• ". . . Plaintiff later became aware that he was being carefully scrutinized by various members of the department's supervisors and administration personnel. The list included STECKLER . . . " among others. (Compl. ¶ 58.)

• Following a fitness for duty evaluation Plaintiff was directed to take, Plaintiff alleges: "During subsequent conversations with STECKLER, Plaintiff told him that Plaintiff felt that he had been mistreated in the department because of his race and that he had been singled out and labeled because of race based perceptions. . . . Plaintiff asked him to order an investigation

5

1    into the facts surrounding the incident, but he declined to do so. STECKLER told him that
     Plaintiff had been sent to the exam based on the incidents in the memo, as well as
2    information/rumors that Plaintiff was abusing alcohol, using steroids, and was a gambler. . . .
3    When Plaintiff advised STECKLER that Plaintiff didn't drink, STECKLER laughed." (Compl.
     ¶ 64.)
4

5         •     Regarding an alleged incident involving a commemorative pen (for ten years of
     service) that Plaintiff was scheduled to receive from Steckler, Plaintiff alleges: "Plaintiff did not
6    know when STECKLER was scheduled to present the pen, and had taken an off day on the day he
7    came to briefing. STECKLER did in fact present another officer with his pen, as well as everyone
     else who was due for it. Normally, STECKLER makes a second visit to briefing to present the
8    pen to anyone who may have been off on his first attempt. STECKLER did not present his pen to
     Plaintiff until February 15, 2007. STECKLER claimed that a secretary had dropped the ball on
9    him." (Compl. ¶ 75.)

10        •     Regarding an alleged incident between Plaintiff and another officer, Sergeant Epps,
11   Plaintiff alleges: "On December 18, 2006, Plaintiff received an email from Internal Affairs
     Sergeant Mazzone. The email advised that STECKLER had directed him to conduct an
12   investigation regarding his claims that Sergeant Epps had blocked his movements following the
     session on November 13, 2006." (Compl. ¶ 79.)
13

14        The Complaint contains the following allegations concerning Nelson:

15        •     Plaintiff alleges that an internal affairs investigation was instituted against him
16   following "a claim Plaintiff had filed with the FEHA regarding harassment Plaintiff was receiving
     from defendant Nelson in relation to his [work related] injury." (Compl. ¶ 73.)
17

18        •     ". . . Plaintiff later became aware that he was being carefully scrutinized by various
     members of the department's supervisors and administration personnel. The list included . . .
19   NELSON . . . " among others. (Compl. ¶ 58.) As noted above, Plaintiff makes the same
     allegation against Chief Steckler.
20
          These allegations are insufficient as a matter of law to support the claims asserted by
21
     Plaintiff against Steckler and Nelson.
22
23        1.    **Plaintiff's First Cause Of Action Fails Because Chief Steckler And Captain
                Nelson's Alleged Conduct Does Not Support A Claim for Racial Harassment
24              Under The FEHA.**

25        There are no factual allegations that Steckler and Nelson engaged in any act that would

26   constitute racial harassment in violation of FEHA. California Code of Regulations, title 2, section

27   7287.6, subdivision (b)(1) provides examples of actionable harassment: verbal epithets or

28   derogatory comments, physical interference with freedom of movement, derogatory posters or

                                                  6

1    cartoons, and unwanted sexual advances. *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55,

2    63 (Ct. App. 1996). In *Janken*, the Court stated:

3        [H]arassment consists of conduct not necessary for performance of a supervisory job. *Id.*
4        Instead, harassment consists of conduct <u>outside the scope of necessary job performance</u>,
         conduct presumably engaged in for personal gratification, because of meanness or bigotry,
5        or for other personal motives. *Id.* (emphasis added.) Harassment is not conduct of a type
         necessary for management of the employer's business or performance of the supervisory
6        employee's job. *Id.*

7        Here, Plaintiff's allegations fail to plead facts which, if true, could legally constitute racial

8    harassment. First, there are no allegations that Steckler and Nelson ever made any derogatory

9    statements to Plaintiff or engaged in any racially offensive conduct.

10       Second, Plaintiff makes no showing whatsoever that Steckler's alleged failure to timely

11   present Plaintiff with his commemorative pen somehow rises to the level of harassing conduct

12   prohibited by the FEHA. In fact, Plaintiff's own Complaint provides a possible reason for the

13   delay — that Steckler's assistant might have "dropped the ball." (Compl., ¶ 75.) Further,

14   initiating and declining investigations fall squarely within the scope of managing job performance.

15       Similarly, with respect to Nelson, Plaintiff does not provide a single fact illustrating how

16   Nelson allegedly "harassed" him on account of his work related injury. (Compl. ¶ 73.) Plaintiff

17   also makes the sweeping accusation that both Steckler and Nelson "carefully scrutinized" him, but

18   presents no facts whatsoever regarding how or when this alleged "scrutiny" occurred or explain

19   how Steckler and Nelson's conduct was harassing and race-based. In fact, supervisory "scrutiny"

20   falls within the scope of defendants' job duties. As such, the First Cause of Action for racial

21   harassment against Steckler and Nelson must be dismissed.

22       **2.    Plaintiff Does Not Plead Facts Overcoming Defendants' Immunity For
             Discretionary Acts Within The Scope Of Their Management And Supervisory
23           Duties.**

24       Any alleged "scrutiny" of Plaintiff's job performance, as well as the other conduct alleged

25   here — initiating and declining investigations, requiring fitness for duty evaluations, etc. — fall

26   squarely within the realm of Steckler's supervisory role and personnel management authority as

27   Chief of Police and Nelson's role as Captain. Under the discretionary act immunity provision of

28   the Torts Claims Act, public employees are immune for discretionary acts or omissions, even if

                                                7

1   they are allegedly discriminatory. Cal. Gov. Code §§ 820.2, 821.6 (West 1995); *Caldwell v.*

2   *Montoya*, 10 Cal. 4th 972, 988-89 (1995). In *Caldwell*, members of a school district board who

3   voted not to renew plaintiff school superintendent's contract, were sued for race and age

4   discrimination under FEHA. The court held that the decision of who would occupy the post of

5   superintendent were peculiarly sensitive and subjective -- exactly the type of policy decision

6   discretionary immunity was meant to protect. *Id.* at 988. Here, the acts alleged are inherently

7   discretionary within the scope of Steckler and Nelson's authority and because Plaintiff fails to

8   allege facts to the contrary, this cause of action must fail.

9

10         **3.    Plaintiff's Federal Claims (Fourth And Fifth Causes Of Action) Under 42
               U.S.C. Sections 1983 and 1981 Are Insufficiently Pleaded Against Individual
11             Defendants Chief Steckler And Captain Nelson.**

12         Plaintiff's Fourth Cause of Action under 42 U.S.C. section 1983 is premised on the

13  allegation that he was denied equal protection in violation of the Fourteenth Amendment. (Compl.

14  ¶ 124.) To state a claim under 42 U.S.C. section 1983, plaintiff must show that defendant acted

15  with an intent or purpose to discriminate against the plaintiff based upon membership in a

16  protected class. *Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1179 (E.D. Cal. 2005) (*citing*

17  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)). A successful equal protection

18  claim may be brought by a "class of one," where plaintiff alleges that he has been <u>intentionally</u>

19  treated differently from others <u>similarly situated</u> and that there is no rational basis for that

20  difference in treatment. *Neveau*, 392 F. Supp. 2d at 1179 (*citing Village of Willowbrook v. Olech*,

21  528 U.S. 562, 564 (2000)) (emphasis added).

22         None of Plaintiff's complaints support an equal protection claim against Steckler and

23  Nelson. With respect to Steckler, it appears that Plaintiff premises this claim on allegations that

24  Steckler did not investigate Plaintiff's complaints about racial harassment by his peers (Compl.

25  p.2, lines 10-12) and that on one occasion Steckler came to the defense of a Caucasian officer who

26  was the subject of a citizen's complaint, whereas when citizens filed complaints against Plaintiff

27  on three different occasions, Plaintiff was subjected to "investigations." (Compl. ¶ 53-57.)

28  Notably, Plaintiff does not allege that these alleged "investigations" were initiated by Steckler

8

1   (rather, Sergeant Tajima-Shadle initiated and carried out these investigations). (Compl. ¶ 53, 54,

2   55, 57.) Further, it appears that at least two of these "investigations" were "informal" (Compl. ¶

3   53, 54) and none of them led to any punitive or disciplinary action. (Compl. ¶ 53, 55, 57.)

4       With respect to Nelson, it appears that Plaintiff premises this claim on two vague

5   allegations: that Nelson "carefully scrutinized" Plaintiff (Compl. ¶ 58) and harassed him on

6   account of a work related injury. (Compl. ¶ 73.) No factual detail is alleged.

7       None of these allegations is sufficient to support an equal protection claim against Steckler

8   and Nelson. First, it is unclear from the face of the pleading exactly what discriminatory conduct,

9   if any, Plaintiff is alleging against them. Second, nowhere in the Complaint does Plaintiff allege

10  that Steckler's and Nelson's alleged conduct towards him was intentional (premised on a

11  discriminatory animus) nor does he allege that they treated him differently from others who were

12  similarly situated. Third, whatever "scrutiny" and "investigations" instituted against Plaintiff (by

13  Sergeant Tajima-Shadle or otherwise) appeared to be supported by a rational basis —

14  investigating or inquiring into work performance issues and complaints made against Plaintiff.

15  For these reasons, Plaintiff's Fourth Cause of Action against Steckler and Nelson must be

16  dismissed.

17      Similarly, Plaintiff's Fifth Cause of Action under section 1981 against Steckler and Nelson

18  also fails to state a claim. Section 1981 provides that all persons "shall have the same right in

19  every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all

20  laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ."

21  42 U.S.C. § 1981(a). In 1991, Congress amended section 1981 to include "postformation

22  conduct", including racial harassment and discrimination relating to the terms and conditions of

23  continuing employment. 42 U.S.C. § 1981(b); see Peterson v. Cal. Dep't of Corr. & Rehab., 451

24  F. Supp. 2d 1092, 1102 (E.D. Cal. 2006) (citing Domino's Pizza, Inc. v. McDonald, 546 U.S. 470,

25  477 (2006)). Nonetheless, the focus upon contractual obligations is "positively reinforced . . . [by]

26  § 1981(b)'s reference to a 'contractual relationship.'" Id. Consequently, "a plaintiff cannot state a

27  claim under section 1981 unless he has (or would have) rights under [an] existing (or proposed)

28  contract that he wishes 'to make and enforce.'" Id.

9

1    In order to establish a claim under section 1981, plaintiff must establish that (1) he is a

2  member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the

3  basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the

4  statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.).

5  *Peterson*, *supra*, 451 F. Supp. 2d at 1101. Like cases brought under the Equal Protection Clause

6  and section 1983, a prima facie case of racial discrimination under section 1981 requires proof of

7  intentional discrimination (i.e. disparate impact alone is not enough). *Gay v. Waiters' & Dairy*

8  *Lunchmen's Union*, 694 F.2d 531, 537 (9th Cir. 1982).

9    Here, Plaintiff fails to state a claim under section 1981 because he has not alleged a

10  contractual relationship or rights under an existing (or proposed) contract that he wishes "to make

11  and enforce" nor has he alleged any other basis under which he could state this claim.

12    Further, Plaintiff's Complaint is factually devoid of allegations which demonstrate that

13  Steckler and Nelson took any actions which were motivated by discriminatory animus. The

14  Complaint states that Plaintiff told Steckler at one point that he "felt he had been mistreated in the

15  department because of his race . . . . " (Compl. ¶ 20) but makes no assertion that Steckler himself

16  intentionally discriminated against him on account of his race. The Complaint is also completely

17  silent with respect to Nelson's motivation. Substantively, none of Plaintiff's allegations state the

18  bare minimum of facts showing that any of the alleged discriminatory actions were motivated by

19  his race or color, nor facts to support that this discrimination concerned the activities enumerated

20  in the statute. Rather, Plaintiff has pled facts indicating a rational basis for the scrutiny and

21  investigations (or lack thereof) instituted against him. Accordingly, this claim must also fail for

22  failure to plead sufficient facts to state a claim under section 1981.

23

24    **4.    Chief Steckler And Captain Nelson Are Entitled To Qualified Immunity on Plaintiff's Section 1981 And 1983 Claims.**

25    Qualified immunity from civil suit is available to government officials performing

26  discretionary functions so long as their conduct does not violate clearly established statutory or

27  constitutional rights which a reasonable person would have known. *Mory v. City of Chula Vista*,

28  No. 07CV0462, 2008 U.S. Dist. LEXIS 9911, at 8 (S.D. Cal. February 11, 2008) (*citing Harlow v.*

10

1   *Fitzgerald*, 457 U.S. 800, 818 (1982)).  Whether defendants are immune turns on the objective

2   reasonableness of their conduct in light of clearly established law, not on their subjective good

3   faith.  *Tubbesing v. Arnold*, 742 F.2d 401, 405 (8th Cir. 1984).  When performing discretionary

4   functions, the government official is entitled to qualified immunity if he "reasonably could have

5   believed that [his] conduct was lawful 'in light of clearly established law and the information [that

6   he] possessed.'"  *Debro v. San Leandro Unified Sch. Dist.*, No C-99-0676 VRW, 2001 U.S. Dist.

7   LEXIS 17388, at 5 (N.D. Cal. October 11, 2001 (*citing Cohen .v San Bernardino Valley College*,

8   92 F.3d 968, 973 (9th Cir. 1996)).

9          Here, Plaintiff complains of intentional harassment and discrimination, but cannot show

10  that any of the acts alleged against Steckler and Nelson are premised on a discriminatory animus.

11  Further, in the course of performing discretionary functions pursuant to their roles as supervisors

12  of Plaintiff -- such as scrutiny of Plaintiff's work performance, prosecuting investigations and

13  fitness for duty examinations, declining to investigate -- Steckler and Nelson would have no

14  reason to believe that their actions were unlawful.  In fact, these actions are objectively

15  discretionary and valid personnel actions taken within the scope of their supervisory roles.  Thus,

16  they are entitled to qualified immunity and these claims must be dismissed.

17          **5.    Plaintiff's Seventh Cause Of Action For Intentional Infliction Of Emotional
               Distress Fails For Failure To Plead Outrageous Conduct On The Part Of
18             Chief Steckler And Captain Nelson.**

19          The intentional infliction of emotional distress claim fails for two reasons.  It is well-

20  settled law that specific and intentional conduct that in and of itself is outrageous is required, and

21  causation must be shown.  *Janken, supra*, 46 Cal. App. 4th at 79-80.  "Outrageous conduct" is

22  conduct that exceeds the bounds of human decency.  *Id*. at 80; *Aquino v. Superior Court*, 21 Cal.

23  App. 4th 847, 856 (Ct. App. 1993); *see, e.g., Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d

24  148, 155 (1987).  Managing personnel is not outrageous conduct beyond the bounds of human

25  decency, but rather conduct essential to the welfare and prosperity of society.  *Janken, supra*, 46

26  Cal. App. 4th at 80.

27          Here, the vague assertions that Nelson "harassed" Plaintiff and that Steckler and Nelson

28  "carefully scrutinized" him are plainly insufficient to support a claim for intentional infliction of

AMENDED NOTICE OF MOTIONS AND MPA IN SUPPORT OF                    [C 07-06458 JSW]
MOTIONS TO DISMISS (FRCP 12(b)(6))

1  emotional distress. Further, the mere pleading of conduct falling within Steckler's supervisory and

2  management role (i.e. instituting and declining investigations) is insufficient to support this claim.

3  In fact, Plaintiff does not allege and cannot make a factual showing that <u>anything</u> Steckler and

4  Nelson allegedly did was intentional and exceeded all bounds usually tolerated by a decent

5  society.

6       Second, Steckler and Nelson are entitled to immunity under the California Government

7  Code with respect to Plaintiff's IIED claim. (*See infra*, p. 17.)

8       **6.    Plaintiff Cannot Establish A Claim For Negligent Infliction Of Emotional
             Distress Against Chief Steckler And Captain Nelson.**

9

10      Plaintiff's negligent infliction of emotional distress claim is facially and fatally flawed on a

11  variety of grounds. First, a claim of negligent infliction of emotional distress is based simply on a

12  negligence theory. *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992); *Potter v. Firestone*

13  *Tire & Robber Co.*, 6 Cal. 4th 965, 984 (1993). Thus, the traditional elements of duty, breach of

14  duty, causation, and damages apply — with the essential element being duty. *Burgess, supra*, 2

15  Cal. 4th at 1072. Unless the defendant has assumed a duty to plaintiff in which the emotional

16  condition of the plaintiff is an object, recovery is available only if the emotional distress arises out

17  of the defendant's breach of some other legal duty and the emotional distress is proximately caused

18  by that breach of duty. *Potter, supra*, 6 Cal. 4th at 985.

19      Here, Plaintiff alleges that Steckler and Nelson "negligently engaged in the wrongful acts

20  alleged herein" (Compl. ¶ 139) without bothering to plead the existence of a legal duty (i.e. special

21  relationship or a duty imposed by law) or a breach of that duty. Without these elements, there is

22  no cognizable legal theory to entitle Plaintiff to some form of relief. For this reason alone, this

23  claim must be dismissed.

24      Second, this allegation merely incorporates his prior claims for intentional discrimination

25  and intentional infliction of emotional distress — each is an intentional tort. *See Dayton v.*

26  *Modesto Irrigation Dist.*, No. CV-F-06-1076 LJO, 2007 U.S. Dist. LEXIS 85791, at 35 (E.D. Cal.

27  November 16, 2007). Intentional conduct cannot form the basis for a negligent infliction of

28  emotional distress claim. *Id.* at 34 (*citing Semore v. Pool*, 217 Cal. App. 3d 1087, 1103-04 (Ct.

AMENDED NOTICE OF MOTIONS AND MPA IN SUPPORT OF                    [C 07-06458 JSW]
MOTIONS TO DISMISS (FRCP 12(b)(6))

1    App. 1990)).  In *Semore*, a chemical plant employee was terminated for refusing to consent to a

2    drug test.  The court sustained a demurrer to the intentional and negligent infliction of emotional

3    distress claims, finding that the supervisor's conduct in requiring the testing was a normal part of

4    the employment relationship and such supervisor conduct was necessarily "intentional."  *Id.*

5    Likewise, in *Edwards v. U.S. Fidelity & Guarantee Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal.

6    1994), *aff'd*, 74 F.3d 1245 (9th Cir. 1996), the court held that the supervisor's refusal to promote

7    plaintiff was inherently intentional and within the compensation bargain.  Both cases held that

8    intentional conduct within the compensation bargain could not be the basis for the negligence

9    action.

10    Similarly here, Plaintiff merely incorporates his prior claims for intentional discrimination

11    and intentional infliction of emotional distress into his "negligence" claim.  *Semore* and *Edwards*

12    stand for the proposition that an intentional act cannot give rise to a claim for negligence infliction

13    of emotional distress.  *Dayton*, *supra*, No. CV-F-06-1076 LJO, 2007 U.S. Dist. LEXIS 85791 at

14    35.  Further, any alleged conduct by Steckler and Nelson stem from their supervisory role as Chief

15    of Police and Captain, respectively.  *See Edwards*, *supra*, 848 F. Supp. at 1466.  Plaintiff has not

16    pled any facts which would implicate negligence of any kind on the part of Steckler or Nelson.

17    Accordingly, this claim should also be dismissed on this additional ground.

18    Third, as more fully articulated below (*see infra*, p. 13-14), claims made by employees on

19    grounds of negligence are barred by Workers' Compensation.

20    Finally, Steckler and Nelson are immune from actions of negligence based on the

21    California Government Code.  (*See infra*, p. 17.)

22    **B.    PLAINTIFF'S SIXTH AND SEVENTH CAUSES OF ACTION FOR NEGLIGENT
         AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE BARRED**
23    **AS A MATTER OF LAW**

24          **1.    Plaintiff's Common Law Tort Claim For Negligent Infliction Of Emotional
                Distress Is Preempted By The Exclusive Remedy Provisions Of California's**
25          **Workers' Compensation Law.**

26    As noted above, Plaintiff's Sixth Cause of Action for negligent infliction of emotional

27    distress is premised on a negligence-based theory.  Injuries suffered by employees in the

28    workplace, caused by the negligence of their employer, are squarely preempted by California's

13

1  workers' compensation law. Cal. Lab. Code § 3600 *et seq.* (West 2003); *Livitsanos v. Superior*

2  *Court*, 2 Cal. 4th 744, 747 (1992) ("We hold that claims for intentional and negligent infliction of

3  emotional distress are preempted by the exclusivity provisions of the workers' compensation law .

4  . . . "); *Arendell v. Auto Parts Club, Inc.*, 29 Cal. App. 4th 1261, 1265 (Ct. App. 1994) (*citing*

5  *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 713-14 (1994) ([T]here are injuries caused by employer

6  negligence . . . [t]hese injuries are subject to workers' compensation exclusivity)). This

7  "unmistakable declaration of legislative policy" was designed to exempt employers "from

8  common law tort liability within the range of on-the-job negligence. *Pacific Gas & Electric v.*

9  *Morse*, 6 Cal. App. 3d 707, 714-15 (Ct. App. 1970).

10      The issue is expressly controlled by statute – Labor Code section 3602. This section

11  provides that "[w]here the conditions of compensation set forth in section 3600 concur, the right to

12  recover such compensation is [with certain limited exceptions], *the sole and exclusive remedy of*

13  *that employee or his or her dependents against the employer* . . . . " Cal. Lab. Code § 3602(a)

14  (emphasis added). The exceptions are limited to: willful physical assaults (§ 3602(b)(1));

15  fraudulent concealment of the existence of injury (§ 3602(b)(2)); or injuries caused by a defective

16  product under certain specific circumstances. (§ 3602(b)(3).) None of these exceptions apply

17  here.

18      Here, the conditions of compensation unquestionably exist under Labor Code section 3600,

19  as there is no dispute that the City and its employees are subject to workers' compensation laws:

20  the injuries as alleged occurred during employment (Plaintiff specifically allege that he suffered

21  "mental anguish", "emotional distress" and "harm" during his employment (Compl. ¶ 139, 141),

22  and the injuries are alleged to have been caused by the City's negligence. (Compl. ¶ 139.) It is

23  axiomatic that employees are preempted from suing for personal injuries caused by their

24  employers' alleged negligence. Accordingly, the Sixth Cause of Action must be dismissed

25  without leave to amend.

26      **2.    Plaintiff's Intentional Infliction Of Emotional Distress Claim Is Also Preempted By Workers' Compensation Law Because The Alleged Conduct Stems From Risks Normally Within The Scope Of Employment.**

28      Under California law, workers' compensation provides employees their exclusive remedy

1   for claims of emotional distress, even if the alleged conduct is <u>intentional</u> or might be

2   characterized as egregious, <u>unless</u> the conduct stems from risks not normally within the scope of

3   employment. Cal. Lab. Code § 3601, 3602(a); *see Livitsanos*, 2 Cal. 4th 744 at 747; *Shoemaker v.*

4   *Myers*, 52 Cal. 3d 1, 15 (1990) ("[A]n employee suffering emotional distress causing disability

5   may not avoid the exclusive remedy provisions of the Labor Code by characterizing the

6   employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional

7   disturbance resulting in disability.")  However, the exclusivity rule does not bar emotional distress

8   attributed to unlawful discrimination or harassment injuries outside the normal scope of

9   employment. *Livitsanos*, 2 Cal. 4th at 756; *Fretland v. County of Humbolt*, 69 Cal. App. 4th 1478,

10  1492 (Ct. App. 1999).

11         Defendants are not asserting that the workers' compensation statutes bar Plaintiff's race-

12  based claims under FEHA (First, Second and Third Causes of Action).  Rather, Defendants are

13  asserting that the exclusivity doctrine bars Plaintiff's common law tort claim of intentional

14  infliction of emotional distress (Seventh Cause of Action).  Here, Plaintiff tries to avoid workers'

15  compensation preemption by cloaking his intentional infliction of emotional distress claim in

16  allegations of racial harassment and discrimination under FEHA.  However, a close look at

17  Plaintiff's allegations show that the events supporting this cause of action against each defendant

18  arose during the normal course and scope of his employment and managerial decisions related to

19  his job (i.e. disciplinary proceedings, internal investigations, criticisms of work practices, poor

20  performance evaluations, not being offered another allegedly better position, recommendation

21  against a pay raise).  These employment actions are deemed "part of the normal risk of

22  employment" and hence subject to the exclusive remedy provisions of workers' compensation law.

23  *See Cole*, 43 Cal. 3d at 160-61.

24         For example, as against the City, Plaintiff alleges that he was denied promotion and

25  subjected to "unwarranted disciplinary proceedings" on account of his race.  (Compl. p. 2, lines 7-

26  8.)  However, the <u>only</u> incident in Plaintiff's entire Complaint where he implies that he was passed

27  up for a better position was in early 2002 when Plaintiff tested for "several specialized positions"

28  and was offered the position of a D.A.R.E. officer.  (Compl. ¶ 43.)  Plaintiff claims that "this

---

15

1    position is generally considered the least desirable of all specialized positions, and is frequently

2    given away to anyone who will take it." (Compl. ¶ 43.) There is nothing in Plaintiff's Complaint

3    alleging that this decision was race-based; in fact, Plaintiff admits that he accepted this position in

4    order "to get his foot in the door of the department's administrative side." (Compl. ¶ 43.)

5    Nothing suggests that this decision by the City was anything other than a managerial decision

6    within the normal course of Plaintiff's employment.

7         Further, the so-called "disciplinary proceedings" instituted by the City against Plaintiff –

8    fitness for duty evaluations, investigations over Plaintiff's field performance, investigations over

9    citizen complaints made against Plaintiff, an internal affairs investigation, and a four day suspicion

10   that was later rescinded (Compl. ¶ 53, 54, 63, 64, 69, 73, 79) – all arose from the City's legitimate

11   right as an employer to evaluate Plaintiff's on-the-job performance and conduct internal

12   investigations over citizen complaints or incidents between officers. Thus, any alleged emotional

13   distress arising from these events are clearly barred by the workers' compensation exclusivity rule.

14        Similarly, Plaintiff alleges that Steckler failed to investigate his claims of discrimination

15   and harassment, unfairly instituted an internal investigation over an incident between Plaintiff and

16   Sergeant Epps, and failed to timely present Plaintiff with his commemorative pen (Compl. ¶ 64,

17   75, 79) and that Steckler and Nelson somehow "scrutinized" him. (Compl. ¶ 58.) Not only do

18   these alleged acts fail to meet the "extreme" and "outrageous" requirement already discussed,

19   none of these events are outside the normal scope of employment and are thus barred by the

20   workers' compensation exclusivity rule.

21        As the California Supreme Court explained at length in *Cole*: "If characterization of

22   conduct normally occurring in the workplace as unfair or outrageous were sufficient to avoid the

23   exclusive remedy provisions of the Labor Code, the exception would permit the employee to

24   allege a cause of action in every case where he suffered mental disability merely by alleging an

25   ulterior purpose of causing injury. Such an exception would be contrary to the compensation

26   bargain and unfair to the employer." *Cole*, 43 Cal. 3d at 160-61. Accordingly, Plaintiff's Seventh

27   Causes of Action is preempted by the workers' compensation exclusivity and must be dismissed

28   as a matter of law without leave to amend.

AMENDED NOTICE OF MOTIONS AND MPA IN SUPPORT OF        [C 07-06458 JSW]
MOTIONS TO DISMISS (FRCP 12(b)(6))

1

3.    **Both Claims Are Barred Because Public Entities And Public Employees Are**
2          **Immune From Common Law Liability Under The California Torts Claims**
          **Act.**

3          A separate basis for barring Plaintiff's Sixth and Seventh Causes of Action for negligent

4   and intentional infliction of emotional distress as against defendants City, Steckler, and Nelson is

5   premised upon the California Torts Claims Act. Cal. Gov. Code §§ 810-935.7 (West 1995). First,

6   these claims must fail as against the City because there is no such thing as a cause of action for

7   general negligence against a California public entity. Government Code section 815 provides that

8   "except as otherwise provided by statute", a public entity is not liable for any injury, "whether

9   such injury arises out of an act of omission of the public entity or a public employee or any other

10  person." Cal. Gov. Code § 815. Section 815.2(b) provides that public entities are immune from

11  injuries of public employees where the employee is immune from liability. Cal. Gov. Code §

12  815.2(b). The effect of section 815 is to abolish all common law or judicially declared forms of

13  liability against a California public entity. *Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d

14  405, 409 (Ct. App. 1984). Unless there is a specific statute which operates to impose tort liability

15  upon a public entity, no such liability can exist. *Becerra v. County of Santa Cruz*, 68 Cal. App.

16  4th 1450, 1457 (Ct. App. 1998)("[I]n the absence of some constitutional requirement, public

17  entities may be liable only if a statute declare them to be liable.").

18         For similar reasons, these claims against Steckler and Nelson must also fail. As discussed

19  above, Section 820.2 (*see supra*, p. 7-8) extends the same immunity for acts and omissions of a

20  public employee, whether the employee's exercise of discretion vested in them is abused. Cal.

21  Gov. Code §§ 820.2, 821.6; *See Caldwell*, *supra*, 10 Cal. 4th at 988-89.

22         Immunity for both the public entity and public employee is available on both intentional

23  and negligent tort claims, including claims for intentional and negligent infliction of emotional

24  distress. *Davison v. Santa Barbara High School District*, 48 F. Supp. 2d 1225, 1232 (C.D. Cal.

25  1998); *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1438 (Ct. App. 1988). *Davison*

26  and *Kemmerer* are on point. In *Davison*, plaintiff alleged facts regarding peer racial

27  discrimination and the ensuing hostile educational environment against the school district and

28  school officials. *Davison*, 48 F. Supp. 2d at 1233. In addition, she alleged facts regarding her

17

AMENDED NOTICE OF MOTIONS AND MPA IN SUPPORT OF                    [C 07-06458 JSW]
MOTIONS TO DISMISS (FRCP 12(b)(6))

1    efforts to notify and obtain assistance from school officials and their refusal to take any action in
2    response. *Id.* Her claim of discrimination withstood the motion to dismiss, but her claims of
3    negligence, and negligent and intentional infliction of emotional distress against the school district
4    and school officials were dismissed on the grounds that those claims fell within the immunities'
5    boundaries. *Id.* at 1232-33.

6        Similarly, in *Kemmerer*, a civil service employee brought suit against the county and
7    individual county officials based on disciplinary proceedings instituted against him and his
8    discharge arising out of those proceedings. *Kemmerer, supra.* One of the causes of action was for
9    intentional infliction of emotional distress. The court held that each of the alleged actions —
10   disciplinary proceedings, investigations, and subsequent dismissal — were within the scope of
11   defendant employees' employment. *Id.* at 1436-37. In finding immunity, the court commented:
12   "[B]ecause of important policy considerations, the rule has become established that government
13   officials are not personally liable for their discretionary acts within the scope of their authority
14   even though it is alleged that their conduct was malicious." *Id.* at 1437-38.

15       The same considerations apply here. Plaintiff's allegations against the City, Steckler, and
16   Nelson all relate to valid personnel actions (or lack thereof) taken based on their supervisory roles,
17   i.e. scrutiny of work performance, failure to promote, prosecuting investigations and fitness for
18   duty exams, declining to investigate, etc. These emotional distress claims are not predicated upon
19   a statute as required by section 815 and related sections. Thus, defendants are entitled to
20   immunity from these claims. Because immunity is jurisdictional, these causes of action must be
21   dismissed without leave to amend. *See Davison*, 48 F. Supp. 2d at 1232.

22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

AMENDED NOTICE OF MOTIONS AND MPA IN SUPPORT OF                    [C 07-06458 JSW]
MOTIONS TO DISMISS (FRCP 12(b)(6))

1

## IV.    CONCLUSION

2          For all the foregoing reasons, Chief Steckler and Captain Nelson respectfully request that

3  the Court dismiss the Complaint, and each claim contained therein, with respect to them.  The City

4  requests dismissal of the Sixth and Seventh Causes of Action.

5

6  Dated: February 25, 2008                    MEYERS, NAVE, RIBACK, SILVER & WILSON

7

8                                                        /s/

9                                    By: _____

10                                            Arthur A. Hartinger, Esq.
                                             Reichi Lee, Esq.
11                                           Attorneys for Defendants
                                             CITY OF FREMONT, CRAIG STECKLER,
12                                           ROBERT NELSON, CHARLES UHLER, and
                                             CURTIS CODEY
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED NOTICE OF MOTIONS AND MPA IN SUPPORT OF                    [C 07-06458 JSW]
MOTIONS TO DISMISS (FRCP 12(b)(6))