1  **DOUGLAS C. KANE, State Bar No. 198934**
   **LAW OFFICE OF DOUGLAS KANE**
2  **123 Jewell Street**
   **Santa Cruz, CA  95060**
3  **(831) 459-8000**
   **Fax:  (831) 459-8127**
4

5  **Attorney for Plaintiff PHILLIP BROOKS**

6

7

8              **IN THE UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
9

   **PHILLIP BROOKS,**                        **CASE NO. CV 07-6458**
10
                    **Plaintiff,**             **PLAINTIFF'S OPPOSITION TO**
11                                             **DEFENDANTS MOTIONS TO**
           **v.**                              **DISMISS (Fed. R. Civ. P. 12(b)(b)**
12
   **CITY OF FREMONT, CRAIG**                  **Date: April 18, 2008**
13 **STECKLER, ROBERT NELSON,**                **Time: 9:00 a.m.**
   **CHARLES UHLER, CURTIS CODEY,**            **Place Courtroom 2, 17th Floor**
14 **and DOES 1-20, inclusive,**
                                               **The Hon. Feffrey S. White presiding**
15                  **Defendants.**
                                               **Complaint Filed: November 26, 2007**
16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3  I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 1

4  II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

5  III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

6  IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

7       A.      PLAINTIFF'S COMPLAINT STATES VALID CAUSES OF ACTION
               AGAINST STECKLER AND NELSON. . . . . . . . . . . . . . . . . . . . . . . . .  11

8
               1.      Racial Harassment in Violation of the Califomia of Fair
9                      Employment and Housing Act. . . . . . . . . . . . . . . . . . . . . .  11

10              2.      Denial of Equal Protection and Equal Rights Under 42 U.S.C.
                       Sections 1983 and 1981 . . . . . . . . . . . . . . . . . . . . . . . . . .  13
11
                3.      Infliction of Emotional Distress. . . . . . . . . . . . . . . . . . .  16
12
        B.      PLAINTIFF'S COMPLAINT STATES VALID CAUSES OF ACTION FOR
13             NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL
               DISTRESS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
14
   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
15
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE NO.**

*Aguilar v. Avis Rent A Car System, Inc.*,
    21 Cal.4th 121 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cabesuela v. Browning-Ferris Industries of California, Inc.*,
    68 Cal.App.4th 101 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cahill v. Liberty Mutual Insurance Company*,
    80 F3d 336 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Caldwell v. Montoya*,
    10 Cal.4th 972 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Cole v. Fair Oaks Fire Protection District*,
    43 Cal. 3d 148 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Conley v. Gibson*,
    355 U.S. 41(1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Davison v. Santa Barbara High School District*,
    48 F. Supp. 2d 1225 (C.D. Cal 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fisher v. San Pedro Peninsula Hospital*,
    214 Cal.App.3d 590 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fretland v. County of Humboldt*,
    69 Cal.App.4th 1478 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gantt v. Sentry Insurance*,
    1 Cal.4th 1083 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Gilligan v. Jamco Development Corporation*,
    108 F3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Johnson v. State of California*,
    207 F3d 650 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kemmerer v. County of Fresno*,
    200 Cal. App.3d 1426 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kovatch v. California Casualty Management Co.*,
    65 Cal.App.4th 1256 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 US 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Livitsanos v. Superior Court*,
    2 Cal.4th 744 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1

**TABLE OF AUTHORITIES (cont.)**

2

**CASES (cont.)**                                           **PAGE NO.**

3

*Matthews v. Superior Court*,
     34 Cal.App.4th 598 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4

*Mory v. City of Chula Vista,*
     No. 06CV1460, 2008 U.S. Dist. LEXIS 9911 (S.D. Cal February 11, 2008) 14-15

5

6

*Murray v. Oceanside Unified School Dist.,*
     79 Cal.App.4th 1338 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7

*Neveau v. City of Fresno,*
     392 F. Supp. 2d 1159 (E.D Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8

9

*Nunn v. State of California*
     35 Cal.3d 616 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10

*Pareto v. F.D.I.C.,*
     139 F3d 696 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11

12

*Parks School of Business, Inc. v. Symington*,
     51 F3d 1480 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13

*Peloza v. Capistrano Unified School District*,
     37 F.3d 517 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14

*Peterson v. Cal. Dep't of Corr. & Rehab.,*
     451 F. Supp 2d 1092 (E.D. Cal 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15

16

*Reno v. Baird,*
     18 Cal.4th 640 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17

*Smith v. International Brotherhood of Electrical Workers,*
     109 Cal.App.4th 1637 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18

19

*United States v. Redwood City,*
     640 F2d 963 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20

*United States v. White,*
     893 F. Supp.1423 (CD CA 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21

22

*Zelig v. County of Los Angeles*,
     27 Cal.4th 1112 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

23

24

25

26

27

28

**TABLE OF AUTHORITIES (cont.)**

**STATUTES**                                                        **PAGE NO.**

California Government Code
      section 12940 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
      section 815.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
      section 820.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 17
      section 821.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 17

42 U.S.C.
      section 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 13, 14
      section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 13, 14

**OTHER AUTHORITY**                                                 **PAGE NO.**

California Code of Regulations,
      title 2, section 7287.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

Federal Rules of Civil Procedure
      Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 10, 11, 13

United States Constitution
      Fourteenth Amendment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

This case is about one man's courageous stand against the entrenched environment of racial discrimination and harassment at the Fremont Police Department, where he still works as an officer, despite 10 years of exemplary service. Not only has he been denied the advancement that his skill, experience and accomplishments should require, he has also faced a continuing barrage of racially based harassing conduct that would have led a lesser man to quit long before. It is an indication of his quality that he continues to not only work for the department as he pursues justice in this case, but also continues to excel in protecting and serving the people of Fremont.

This motion is easily addressed. Defendants try to downplay plaintiff's allegations, claiming that they boil down to complaints regarding criticism of his work performance (see Def's motion, pp. 2-3). However, this disregards the extensive history that plaintiff describes in which he was subjected to specifically racially-based conduct and repeatedly treated in a way that was demonstrably different than his Caucasian colleagues. Indeed, defendants actually concede that plaintiff's allegations, if proven true, do constitute illegal racial discrimination and harassment in violation of the California Fair Employment and Housing Act, and denial of equal protection and equal rights under the United States Constitution, in violation of 42 U.S.C. sections 1981 and 1983. Defendants merely deny that Chief of Police Craig Steckler and Captain Robert Nelson are not personally liable for this conduct, and that plaintiff's ancillary causes of action for infliction of emotional distress are not supported. Yet there is no one more responsible for establishing the discriminatory and harassing environment at the department than defendants Steckler and Nelson. Moreover, plaintiff complained directly to Chief Steckler about the conduct that he was being exposed to, and Chief Steckler refused to institute any kind of investigation of that conduct (in direct violation of department policy). That conduct alone makes him liable for harassment under California law. As for Captain Nelson, he was one of the

1

1   officers involved in subjecting plaintiff to a completely unfair and undeserved fitness

2   for duty examination, which has done more to damage his career than any other single

3   event, and otherwise subjected him to increased scrutiny, including harassing plaintiff

4   over his work-related injury (which led to plaintiff's first complaint filed with the

5   California Department of Fair Employment and Housing).  Finally, the very fact that

6   defendants concede that plaintiff's allegations do constitute illegal discrimination and

7   harassment and denial of equal rights and equal protection negate their claim that his

8   infliction of emotional distress claims fail as a matter of law.

9

10                          **II. STATEMENT OF FACTS**

11      Because a motion to dismiss under Rule 12(b)(6) is designed to test the

12   sufficiency of the Complaint (see STANDARD OF REVIEW, below), all well-pleaded

13   facts in the Complaint are assumed to be true.  Plaintiff is not going to repeat verbatim

14   the 25 pages of facts alleged in his complaint, but will only summarize them here,

15   while referring the court to the Complaint on file for more detail.

16      The backdrop for plaintiff's complaints is the history at the department, where no

17   African-American had ever been promoted beyond the rank of officer before plaintiff

18   filed his complaint last year with the California Department of Fair Employment and

19   Housing. (Compl. ¶ 10.)  Most employees "feel that the majority of African-Americans

20   are not qualified to become police officers and/or are trouble-makers who would not go

21   along with the entrenched good ole boy network within the department"  This creates

22   "a culture in which African-American officers who are not docile in nature are unable to

23   advance in the department, and in which racial jokes and other harassment of African-

24   American officers was permitted to flourish unchecked." (Compl. ¶ 11.)

25      After plaintiff completed his training in January of 1999, as the sole African-

26   American in his zone he was subjected to heightened scrutiny of his work beyond what

27   his colleagues faced and harassed, particularly by Sergeant Curtis Codey, as well

28   Sergeants Chris Mazzone and Curt Lawrence.  (See Compl. ¶¶ 13-20.)  Plaintiff had

                                          2

1  some indication that this conduct was racially-based from comments that Codey made

2  stating that he did not think that "His kind of officer" was suited for the Fremont Police

3  Department and claiming that plaintiff (who is very well-spoken) had an "Accent" that

4  made it obvious that Plaintiff was "From the streets". (Compl. ¶ 18.)  Plaintiff had a

5  discussion with Lieutenant Loriaux, the commander of the shift that Plaintiff was

6  assigned to, about Codey's comment, in which Lieutenant Loriaux told him that

7  Plaintiff was going to have to bear down and deal with CODEY's treatment of him.  No

8  investigation of CODEY's treatment of Plaintiff was instituted. (Compl. ¶20.) However,

9  Plaintiff's suspicion's that Codey's treatment of him was racially-based were later

10  confirmed by a confirmation that he had with his colleagues, Officer's Yount, Fontes,

11  and Holguin, in which Officers Yount and Holguin informed him that they had

12  overheard CODEY refer to Plaintiff as a "Fucking black idiot" during an attempted

13  suicide incident. (Compl. ¶¶ 22-23.)

14      In July 1999, Plaintiff received a negative evaluation from CODEY, who

15  recommended that Plaintiff not be given a regularly scheduled pay raise despite noting

16  that Plaintiff was well liked by his peers, was a hard worker, and in fact was the

17  highest producer in his zone.  Plaintiff has no knowledge of CODEY or any other

18  supervisor recommending the withholding of any other officer's pay step increase

19  since this time. In contrast, Officer Mcintosh, another probationary officer who was

20  under the supervision of CODEY and is Caucasian, was not subjected to the level of

21  scrutiny that Plaintiff was subjected to, despite having a well known reputation for

22  falsifying police reports, having bad officer safety, and making bad decisions in

23  general.  Officer Mcintosh was allowed to progress, unchecked through CODEY's shift

24  and allowed to pass probation, before being forced to resign over issues involving his

25  integrity. Six months later, Codey submitted another evaluation of Plaintiff that

26  basically reversed his first evaluation and recommended that Plaintiff receive his pay

27  increase.(Compl. ¶¶ 24-26.)

28      Beginning in July of 2000, plaintiff endured a long series of harassing conduct

3

and unfair treatment by Claudia (DD) Anderson, a Caucasian dispatcher.  Despite plaintiff's repeated complaints about this conduct, no investigation of it was ever conducted.  Instead, in his year-ending evaluation by Sergeant Clarissa Lew, she criticized plaintiff for having conflict with co-worker's and noted that Plaintiff took a large amount of leave as a result of unhappiness, essentially blaming Plaintiff for his problems with Ms. Anderson. (Compl. ¶¶ 27-42.)

Beginning in August of 2002, plaintiff was target of a series of racial comments and jokes, and then when he complained about them he was subjected to three undeserved investigations as well as inappropriate counseling by Lieutenant Charles Uhler. He overheard Officer Jason Franchi state "Yeah I guess we have to watch what we say in briefing now; I heard that he is sensitive about racial jokes" in reply to another officer's remark to the effect of "You're getting Brooks on your shift".  Another officer, Officer Carpenter, the senior officer in the zone began sending rude messages to Officers Franchi and Bryant, but told them Plaintiff made the comments, causing friction with them.  Officer Carpenter also made comments to the effect of "Brooks is picking on the white boys again," and would frequently make comments about being able to avoid getting citizen complaints while on details with him because the citizen would focus on the "Big black Officer".  Many of these comments were made in briefing with the Lieutenant and the Sergeant present, including an incident in which Officers Carpenter and Franchi played a tape of an angry, incoherent black man, to which Officer Carpenter made a comment to the effect of "Brooks is gonna love this, another black man who hates whitey."  Officer Carpenter also made a comment to the effect of "Brooks can help us translate his Ebonics."  Sergeant Moore often referred to him as the "Keyshawn Johnson" of the zone, or he would comment that Plaintiff had on his "Pouty Shaq face".  Eventually, plaintiff had a discussion with Lieutenant Uhler about this, but instead of addressing the racial harassment, Uhler blamed plaintiff for being surly and ruining morale.  UHLER then attempted to suggest that Plaintiff was having personal problems at home, and suggested that Plaintiff speak with the department

1  psychiatrist.  He insisted that Plaintiff needed to be more thick-skinned.  UHLER went

2  on to tell him that he felt Plaintiff was too high strung, and got angry too fast.  UHLER

3  told him that because of these qualities, maybe Plaintiff should consider working

4  somewhere else, like Oakland where Plaintiff would be more accepted (clearly

5  implying that he should go someplace with a higher percentage of African-Americans.

6  Again no investigation of his complaints of racially-based harassment was conducted.

7  Instead, plaintiff was subjected to a series of investigations.  Despite being cleared of

8  the complaints that Plaintiff was accused of, two of the incidents were documented

9  against him and later used as part of justification to send him to a Fitness For Duty

10  Evaluation. They also demonstrate the difference in the way plaintiff was treated as

11  compared to a Caucasian colleague who had a similar complaint made against him.

12  Despite these investigations and Lieutenant Uhler's criticisms, as well as the

13  heightening scrutiny that plaintiff was getting from department's supervisors and

14  administration personnel, including Steckler and Nelson, plaintiff received a positive

15  evaluation from Sergeant Moore, who noted that Plaintiff had a positive attitude and

16  did not complain or express any negativity, had good peer relationships and worked as

17  a team member.  Sergeant Moore wrote that he was pleased with Plaintiff' effort.

18  (Compl. ¶¶ 44-59.)

19      In August of 2003,  Plaintiff was directed to attend a fitness for duty evaluation.

20  Apparently, it was as a result of the two investigations from his previous shift, a

21  misunderstanding that had just occurred with Sergeant O'Connell (which had been

22  resolved, and which he was told would have no further ramifications, and observations

23  from Uhler and Sergeant Lanier. In the memo that ordered the exam, that there were

24  comments and allegations about incidents in which no one had ever brought to his

25  attention, and observations from UHLER that were opposite from what Sergeant

26  Moore depicted in his evaluation of him.  Plaintiff received the order less than 24 hours

27  before Plaintiff was scheduled to attend the exam.  Plaintiff attended the exam the

28  following day and passed.   Plaintiff later learned that all of the memos had been

1  written four to 6 days prior to his being notified of the exam.  One of the memos had

2  been written two days after the exam.  Plaintiff does not know of any other Officer who

3  has been sent to a Fitness For Duty, absent excessive force complaints, decidedly

4  bizarre behavior, or well known substance abuse problems.  Since his evaluation, the

5  department has had three non-African-American officers retire on stress related

6  issues.  To his knowledge, none of these officers had ever been counseled or

7  otherwise questioned about their behavior leading up to their departures Plaintiff

8  sought out help from his union in getting the related documents expunged, but was

9  declined help because of the medical nature of the incident.  During a subsequent

10  conversation with STECKLER, Plaintiff told him that Plaintiff felt he had been

11  mistreated in the department because of his race and that he had been singled out

12  and labeled because of race based perceptions.  Plaintiff told STECKLER that some of

13  the information in the memos was manufactured and some of the facts had been

14  distorted.  Plaintiff asked him to order an investigation into the facts surrounding the

15  incident, but he declined to do so, laughed at plaintiff, and implied that he was an

16  alcoholic and/or using drugs. Despite Plaintiff explicit statement to the Chief of the

17  Fremont Police Department that felt he had been mistreated in the department

18  because of his race and that he had been singled out and labeled because of race

19  based perceptions, and his explicit request that an investigation into these complaints

20  be instituted, no such investigation was ever conducted.  In contrast to the fitness for

21  duty evaluation and other harassment that he received, Plaintiff received an evaluation

22  from Sergeant O'Connell in January 2004.  The evaluation included 4 ratings of

23  "Exceeds Expectations", which included, judgment and decision making, report writing,

24  and officer safety, and 7 ratings of "Meets Expectations".  Sergeant O'Connell noted

25  that Plaintiff had good verbal skills which had allowed him to control and calm several

26  volatile individuals.  Sergeant O'Connell wrote that he had enjoyed supervising

27  Plaintiff. (Compl., ¶¶ 60-68.)

28       In March 2004, Plaintiff advised Sergeant O'Connell that Plaintiff wanted to take

1  a few days off to recover from the stressful situation.  Plaintiff was given the time off,

2  (the three days Plaintiff requested), and during this time, sought counseling from his

3  personal health provider.  However, upon his attempted return a few days later,

4  Plaintiff was told by Captain Lucero that Plaintiff needed to complete another Fitness

5  For Duty Exam in order to return.  Plaintiff did, with the same psychiatrist who

6  performed the first one.  Plaintiff passed, and was again returned to full duty. (Compl.,

7  ¶ 69.)

8      In 2005 Plaintiff received two evaluations from Sergeant Hunt. In his first

9  evaluation, Sergeant Hunt noted that although Plaintiff had only worked 39 days of the

10 shift, less than half of what everyone else worked, Plaintiff had the highest average of

11 arrests and reports, and outright wrote more citations than anyone in his zone.

12 Sergeant Hunt noted that Plaintiff had an excellent work ethic, had a good command

13 presence, and treated people with respect and professionalism.  Sergeant Hunt also

14 noted a commendation Plaintiff received for apprehending suspected armed robbers.

15 Sergeant Hunt's second evaluation was similar to the first.   Yet in March 2006,

16 Plaintiff was subjected to an internal affairs investigation, his first day back to full duty,

17 following five months of being off on a work related injury.  This also following a claim

18 Plaintiff had filed with the California Department of Fair Employment and Housing

19 regarding harassment Plaintiff was receiving from defendant NELSON in relation to his

20 injury.  In looking over the evidence related to the investigation into the incident,

21 Plaintiff noted inconsistent statements from witnesses, an incomplete investigation,

22 and a blatant violation of the Peace Officer's Bill Of Rights.  Plaintiff received four days

23 suspension for the incident.  However, Plaintiff filed a grievance over the suspension,

24 and just before the arbitration hearing scheduled for earlier this month regarding the

25 grievance, the department offered to rescind the full four-day suspension. (Compl., ¶¶

26 72-73.)

27     In April 2006, while working light desk duty, Plaintiff returned to his desk and

28 found that someone had placed a document in the center of the desk for him to find it.

1  The document had been printed off of the internet and was titled "The City Of Oakland

2  High School proficiency Exam".  The document contained 10 exam like questions

3  about various scenarios.  The questions were obviously directed at minorities,

4  specifically African Americans.  The documented contained names like Rufus, LeRoy,

5  and LaSheena, and put these people in scenarios containing crack habits, pimps, ho's

6  and drive-by shootings.  Plaintiff found the document to be offensive.  (Compl., ¶ 74.)

7       In  June 2006, Plaintiff chose to work a swing shift.  Plaintiff worked under the

8  direct supervision of Sergeant Clarice Sergeant Lew.  In October 2006, Plaintiff was

9  scheduled to receive a gift from the city as acknowledgment for 10 years of service.

10  This is a standard procedure for police department employees who reach milestones

11  in their career, and the gift, usually a pen, is presented by STECKLER in briefing.

12  Plaintiff did not know when STECKLER was scheduled to present the pen, and had

13  taken an off day on the day he came to briefing.  STECKLER did in fact present

14  another officer with his pen, as well as everyone else who was due for it.  Normally,

15  STECKLER makes a second visit to briefing to present the pen to anyone who may

16  have been off on his first attempt. STECKLER did not present his pen to Plaintiff until

17  February 15, 2007.  STECKLER claimed that a secretary had dropped the ball on him.

18  (Compl., ¶ 75.)

19       On November 13, 2006, Plaintiff was ordered into a room and interrogated by

20  two Sergeants, (Sergeant Lew and Epps) regarding supposed misuse of on-duty

21  exercise time.  Apparently, Sergeant Epps felt that Plaintiff showered too long, as

22  opposed to working out.  Sergeant Lew directed him to submit a memo, detailing what

23  Plaintiff thought the exercise program was for, and what Plaintiff did during that time.

24  Sergeant Lew also informed him that his exercise privileges were being suspended

25  pending an investigation by a Captain.  Plaintiff has no knowledge of anyone else ever

26  being treated the way he was for such a petty issue like exercise time. Plaintiff advised

27  Sergeants Lew and Epps that Plaintiff felt as if Plaintiff was being singled out and

28  harassed.   When the interview was over and Plaintiff was given permission to leave

1  the room, Sergeant Epps stood in front of him and demanded that Plaintiff put a time

2  stamp on a tape that had already been turned off.  Sergeant Epps blocked his exit and

3  refused to allow him to leave the room until his 3rd or 4th request.  When Plaintiff was

4  allowed to leave the room, Plaintiff advised Sergeant Epps that Plaintiff planned to file

5  an official complaint against him for physically blocking his movements. However, the

6  investigation by Internal Affairs Sergeant Mazzone appeared to target plaintiff as the

7  subject, rather than the victim.  Sergeant Mazzone read him his Peace officer Bill Of

8  Rights, as well as the "Lybarger" admonition. Plaintiff's union representative, Officer

9  Cooper, indicated that he had never seen that before.  Sergeant Mazzone then

10  advised Plaintiff that he was doing so in his interest, "just in case something else

11  comes up".  Sergeant Mazzone later admitted that he was looking into Plaintiff

12  possibly committing a violation of departmental rules for surreptitious taping. (Compl.,

13  ¶¶ 76-85.)

14          On January 30, 2007, Plaintiff received another notification letter in his

15  department mail box for interview on February 15, 2007. The letter advised him that

16  the purpose of the interview was to obtain specific information regarding his claim of

17  being harassed, picked on and being held to a different standard.  However, on or

18  about February 2, 2007, his attorney served copies of the DFEH complaints filed by

19  Plaintiff alleging racial discrimination and harassment, along with the notices of his

20  right to sue issued by the DFEH, on STECKLER, and subsequently that interview was

21  cancelled. The City subsequently conducted an allegedly "independent investigation"

22  which determined that Plaintiff's allegations were "unsubstantiated". (Compl., ¶¶ 86-

23  87.)

24          On or about July 6, 2007, Plaintiff received a performance evaluation from

25  Sergeant Lew.  In this evaluation, she acknowledged that Plaintiff "led the zone in

26  hazardous citations, total citations, felony arrests, and total arrests" and otherwise

27  performed his duties in an exemplary manner.  Nonetheless, she included a number of

28  criticisms that indicated that he was being held to a different standard than other

1  officers.  Plaintiff submitted a written rebuttal to this performance evaluation. (Compl.,

2  ¶ 88.)

3  ## III.  STANDARD OF REVIEW

4  　　The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the

5  claims stated in the complaint.  The court needs to determine whether the facts

6  alleged, if true, would entitle plaintiff to some for of remedy.  Unless the answer is

7  unequivocally "no", the motion must be denied. (*Conley v. Gibson*, 355 U.S. 41, 45-46

8  (1957); see also *United States v. White*, 893 F. Supp.1423, 1428 (CD CA 1995).)  The

9  granting of such a motion requires a finding that either there is cognizable legal

10  theory, or an absence of sufficient facts alleged under a cognizable legal theory.

11  (*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir 1990).)  The court must

12  construe the complaint in the light most favorable to the plaintiff, must accept all well-

13  pleaded factual allegations as true, and must determine whether plaintiff can prove

14  **any set of facts** to support a claim that would merit relief.  (*Cahill v. Liberty Mutual*

15  *Insurance Company*, 80 F3d 336, 337-338 (9th Cir. 1996); see also *Parks School of*

16  *Business, Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir. 1995).)

17  　　Because of the liberal pleading rules in federal cases, Rule 12(b)(6) motions are

18  viewed with "disfavor" by many courts.  As the Ninth Circuit said, "The motion to

19  dismiss for failure is viewed with disfavor and is rarely granted." (*Gilligan v. Jamco*

20  *Development Corporation*, 108 F3d 246, 249 (9th Cir. 1997) (internal quotes omitted).)

21  A dismissal pursuant to rule 12(b)(6) is therefore only proper in extraordinary cases.

22  (*United States v. Redwood City*, 640 F2d 963, 966 (9th Cir. 1981).)  "A complaint

23  should not be dismissed for failure to state a claim unless it appears beyond doubt that

24  the plaintiff can prove no set of facts in support of his claim which would entitle him to

25  relief." (*Conley, supra*, 355 U.S. at pp. 45-46; *Parks School of Business, Inc., supra*, 51

26  F3d at 1484.)  This is all the more true in civil rights cases such as this one.  The Ninth

27  Circuit has emphasized that the liberal construction rule is particularly important in

28  such cases (see *Johnson v. State of California*, 207 F3d 650, 653 (9th Cir. 2000).)

1   In assessing a 12(b)(6) motion, the court must assume that all general

2   allegations "embrace whatever specific facts might be necessary to support them."

3   (*Peloza v. Capistrano Unified School District*, 37 F.3d 517, 521 (9th Cir. 1994).)

4   Moreover, the court must not only accept as true all material allegations made in the

5   complaint, it must also adopt any reasonable inferences which support a valid claim

6   which can be drawn from those material allegations, even when alternative inferences

7   can be drawn. (*Pareto v. F.D.I.C.,* 139 F3d 696, 699 (9th Cir. 1998); see also

8   *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 US 163,

9   164 (1993); *United States v. White, supra,* 893 F.Supp. at p. 1428.)

10

11                                  **IV.  ARGUMENT**

12

13  **A.    PLAINTIFF'S COMPLAINT STATES VALID CAUSES OF ACTION AGAINST
            STECKLER AND NELSON.**

14

15       Applying the standard of review described above, plaintiff's Complaint asserts

16  valid causes of action against defendants Steckler for racial harassment in violation of

17  the California Fair Employment and Housing Act, denial of equal protection and equal

18  rights under 42 U.S.C. sections 1983 and 1981, and negligent and intentional infliction

19  of emotional distress.  Assuming all of the material allegations to be true, embracing

20  all specific facts that would be necessary to support the general allegations made in

21  the complaint, and adopting all reasonable inference that can be drawn from those

22  allegations, it can not be shown beyond doubt that Plaintiff can prove no set of facts in

23  support of any of his claims against these defendants.

24

25       **1.    Racial Harassment in Violation of the California of Fair Employment
                  and Housing Act.**

26

27       The FEHA and Title VII prohibit employers from discriminating against

28  employees on the basis of race and color.  As the California Supreme Court stated in

---

11

1   *Aguilar v. Avis Rent A Car System, Inc.,* 21 Cal.4th 121, 129 (1999), "One form of

2   employment discrimination is harassment on the basis of race or national origin.

3   Section 12940, subdivision (h)(1), states that it is unlawful '[f]or an employer ... or any

4   other person, because of race ... [or] national origin ... to harass an employee or

5   applicant. ... California Code of Regulations, title 2, section 7287.6, subdivision

6   (b)(1)(A), defines harassment to include "[v]erbal harassment, e.g., epithets,

7   derogatory comments or slurs on a basis enumerated in the Act. ... [T]he harassment

8   complained of must be 'sufficiently pervasive so as to alter the conditions of

9   employment and create an abusive working environment ....'."

10        There is no question that the allegations included in the Complaint give rise to a

11   cause of action for racial harassment; defendant concedes that they do.  The only

12   question is whether Steckler and Nelson may be held liable for this cause of action.

13   The California legislature and courts have long established that individual supervisors

14   can be held personally liable for harassment under the FEHA not only if they

15   participate personally in the harassment, but also if they aid or abet it by failing to

16   investigate or remedy it.  (see Gov. Code § 12940(i), and *Matthews v. Superior Court*,

17   34 Cal.App.4th 598, 605 (1995) .)  Here, the allegations made in the complaint are

18   more than sufficient to give rise to the inference that Steckler and Nelson either

19   participated in the harassment, or aided and abetted it by failing to investigate it

20   remedy it.  This is particularly true of Chief Steckler, who not only was specifically told

21   of plaintiff's complaints and specifically refused to do anything about them (ridiculing

22   plaintiff instead) but also was in charge of the entire department, and therefore

23   responsible by inference for the continuing failure to address plaintiff's mounting

24   complaints.

25        Defendants also claim that Steckler and Nelson are entitled to have this cause of

26   action dismissed against them on the grounds that they are entitled to immunity

27   pursuant to California Government Code sections 820.2 and 821.6, citing *Caldwell v.*

28   *Montoya,* 10 Cal.4th 972, 988-989 (1995).  *Caldwell* is completely inapposite.  As the

12

1  California Supreme Court stated, that case involved the "narrow" issue of whether

2  individual members of an elected school board were immune from damages against

3  them personally for their successful votes to terminate the employment of the school

4  district's superintendent, even when the complaint alleges race and age discrimination

5  in violation of California's Fair Employment and Housing Act. (*Caldwell, supra*, 10

6  Cal.4th at p. 975.)  That case has nothing to do with the question of whether individual

7  supervisors are immune from be held liable from participating in or aiding and abetting

8  harassment.  Indeed, subsequent to *Caldwell* the California Supreme Court made the

9  distinction between discrimination and harassment cases extremely clear, explaining

10  at length in the seminal case *Reno v. Baird* why individual supervisors should be held

11  liable in harassment cases but not in discrimination cases. (See *Reno v. Baird*, 18

12  Cal.4th 640, 646-663 (1998).)[1]  Defendants have not - and cannot - cite any cases that

13  hold that public employees are entitled to immunity from liability for participating in or

14  aiding and abetting unlawful harassment in violation of the FEHA.

15      Defendants' motion must be denied as to this cause of action.

16

17      **2.    Denial of Equal Protection and Equal Rights Under 42 U.S.C.
            Sections 1983 and 1981.**

18

19      Defendants main argument in support of their motion to dismiss both of these

20  causes of action as to Steckler and Nelson is that there is no evidence of

21  discriminatory motivation on the part of those defendants.  This argument completely

22  misses the point of a 12(b)(6) motion.  As discussed above, the court must accept as

23  true not only all material allegations stated in the complaint, it must also accept all

24  inferences that support the plaintiff's claims that can be drawn from those allegations,

25  and must assume that all general allegations embrace whatever specific facts might be

26  necessary to support them.  Here, that includes accepting as true the general

27  _____

28      [1]        It should be noted that plaintiff has ***not*** attempted to hold Steckler or
                Nelson liable pursuant to his racial discrimination cause of action.

13

1  allegation made by plaintiff that Steckler and Nelson were acting from discriminatory

2  motivation in engaging in actions that resulted in plaintiff being denied advancement

3  because of his race, and exposed to constant harassment because of his race.

4      The sole case cited by defendants, *Neveau v. City of Fresno*, 392 F. Supp. 2d

5  1159, 1179 (E.D Cal. 2005) is not at all on point. *Neveau* is primarily a First

6  Amendment retaliation case.   The defendants in that case argued in a footnote that

7  Plaintiff's § 1983 claim should be dismissed insofar as it is based on a violation of the

8  Fourteenth Amendment's equal protection clause.   The plaintiff did not even oppose

9  this contention.  The court held that since "Plaintiff identifies no allegations in his

10  Complaint that he was treated differently from others who were similarly situated" the

11  motion should be granted insofar as plaintiff's § 1983 cause of action was based on

12  alleged violations of the Equal Protection Clause of the Fourteenth Amendment. (*Ibid.*)

13  Here, in contrast, plaintiff does make such allegations (as defendants acknowledge).

14  As such, the motion should not be granted.

15      As to plaintiff's § 1981 claim, defendants also argues that that cause of action

16  should be dismissed against Steckler on the grounds that there was not a sufficient

17  contractual relationship, citing a statement in *Peterson v. Cal. Dep't of Corr. & Rehab.*,

18  451 F. Supp 2d 1092, 1102 (E.D. Cal 2006), that "a plaintiff cannot state a claim under

19  section 1981 unless he has (or would have) rights under [an] existing (or proposed)

20  contract that he wishes 'to make and force'." However, what defendants rather

21  remarkably disregard is that the *Peterson* court then goes on to analyze at length

22  whether a California public employee is employed pursuant to a contract for the

23  purposes of asserting a claim under section 1981 and, concluding that he or she is,

24  rejected the defendants' motion on this grounds.  (*Patterson, supra,* F. Supp 2d at pp.

25  1102-1104

26      Finally, defendants assert that these causes of action should be dismissed

27  against Steckler and Nelson because they are entitled to qualified immunity.

28  Defendants again cite a case that is not on point.   In the very recent case *Mory v. City*

14

1  *of Chula Vista,* No. 06CV1460[2], 2008 U.S. Dist. LEXIS 9911 (S.D. Cal February 11,

2  2008) the plaintiff initially filed a lawsuit against the City of Chula Vista and some of its

3  employees because they refused to allow her to participate in a beauty pageant while

4  she was a probationary employee, and then she subsequently filed a second lawsuit

5  against some members of her union who spoke out against her first suit at a union

6  meeting.  The court granted the city defendants motion for summary judgment on the

7  grounds that they were entitled to qualified immunity because their action in refusing

8  to allow plaintiff to participate in the beauty pageant did not violate clearly established

9  statutory or constitutional rights of which a reasonable person would have known.

10  That holding is completely inapplicable to this action, for two reasons.

11      First, plaintiff does allege that Steckler and Nelson violated clearly established

12  statutory and constitutional rights, namely that they participated in and allowed racial

13  harassment and were responsible for treating plaintiff differently than similarly situated

14  colleagues. Secondly, that case was decided on a motion for summary judgment.

15  Here, it is premature to determine whether or not Steckler and/or Nelson conduct

16  reasonably could have believed that their conduct was lawful in light of clearly

17  established law. At this stage of the litigation, as has been repeatedly been stated, the

18  court is required to assume the truth of plaintiff's material allegations, accept all

19  inferences that support the plaintiff's claims that can be drawn from those allegations,

20  and assume that all general allegations embrace whatever specific facts might be

21  necessary to support them.  The time for defendants to assert claims of qualified

22  immunity would be in a motion for summary judgment and/or at trial, when the

23  evidence regarding this question has been further developed.

24

25

26  _____

27  [2]      Miscited by defendants as No. 07CV0462, which is the companion case in
        which the claims against the union defendants were thrown out on the

28      grounds that they were simply exercising their First Amendment right to
        frees speech.

3.      **Inflection of Emotional Distress.**

Defendants motion to dismiss plaintiff's causes of action for intentional and negligent infliction of emotional distress are similarly deficient.

As to the cause of action alleging intentional infliction of emotional distress, defendants assert that plaintiff has not alleged sufficiently "outrageous" behavior by Steckler or Nelson.  However, California courts have long held that unlawful harassment constitutes outrageous conduct for the purposes of this cause of action. (See *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 617-618 (1989); *Kovatch v. California Casualty Management Co.,* 65 Cal.App.4th 1256, 1278 (1998) [disapproved on other grounds in *Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826, 853, fn. 19 (2001)]; *Murray v. Oceanside Unified School Dist.*, 79 Cal.App.4th 1338, 1362-1363 (2000).  As discussed above, plaintiff's Complaint alleges that Steckler and Nelson participated in and/or aided and abetted the racial harassment that plaintiff was subjected to, and therefore the Complaint also sufficiently alleges outrageous conduct sufficient to support the intentional infliction claim.

As to the cause of action regarding negligent infliction, defendants claim that plaintiff does not sufficiently allege the traditional negligence elements of duty, breach, causation, and damages.  However, under the liberal federal pleading rules, to the extent that those elements are not specifically alleged in the complaint, they are implied by plaintiff's general allegation of negligence.  Therefore, this argument fails as well.


B.    **PLAINTIFF'S COMPLAINT STATES VALID CAUSES OF ACTION FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

California courts have long held that the worker's compensation law does not preempt either negligent or intentional infliction of emotional distress causes of action in employment cases alleging violations of public policy because conduct such as this falls outside the normal risk of the employment relationship (see, *e.g., Gantt v. Sentry*

16

1   *Insurance*, 1 Cal.4th 1083, 1100 (1992); *Cabesuela v. Browning-Ferris Industries of*

2   *California, Inc.,* 68 Cal.App.4th 101, 112-113 (1998);  *Livitsanos v. Superior Court*, 2

3   Cal.4th 744, 756 (1992); *Fretland v. County of Humboldt*, 69 Cal.App.4th 1478, 1492

4   (1999); *Smith v. International Brotherhood of Electrical Workers,* 109 Cal.App.4th

5   1637, 1658 (2003).)  *Cole v. Fair Oaks Fire Protection District*, 43 Cal. 3d 148 (1987),

6   which defendant cites at length, is inapposite because in that cause the plaintiff does

7   not allege violations of any fundamental public policies. Therefore, this argument fails

8   as to both of these causes of action.

9        Moreover, defendants assertion that "there is no such thing as a cause of action

10  for general negligence against a California public entity" (Defs' Motion, p. 17) is simply

11  incorrect.  It is well accepted that this type of cause of action is valid against a public

12  entity under a *respondeat superior* theory of liability pursuant to Government Code §

13  815.2. (See *e.g., Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128 (2002).)   Nor

14  are defendants entitled to immunity pursuant to Government Code sections 820.2 and

15  821.6.  In contrast to the cases cited by defendants, *Davison v. Santa Barbara High*

16  *School District,* 48 F. Supp. 2d 1225, 1232 (C.D. Cal 1998) and *Kemmerer v. County*

17  *of Fresno*, 200 Cal. App.3d 1426, 1438 (1988), this case does not involve "valid

18  personnel actions (or lack thereof) taken based on their supervisory roles" (Defs.

19  Motion, p. 18.)  Neither of those cases include allegations of unlawful harassment by

20  the defendants.  As the California Supreme Court stated in *Nunn v. State of California*,

21  35 Cal.3d 616, 622 (1984), "[t]he immunity afforded by Government Code sections

22  818.2 and 821 attaches only to discretionary functions."  The court goes on to

23  distinguish between "planning" functions which are discretionary, and "operational"

24  functions, which are not.  Plaintiff's allegations here involve "operational" functions and

25  thus defendants are not entitled to immunity.

26

27

28

1

**CONCLUSION**

2          For all of the above reasons, and in the interests of justice, defendants' motion

3    must be denied.

4

5    Dated: March 11, 2008                    LAW OFFICE OF DOUGLAS KANE

6

7                                             By:   ___/S/_____
                                                   DOUGLAS C. KANE
8                                                  Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28