Arthur A. Hartinger (SBN 121521)
ahartinger@meyersnave.com
Reichi Lee (SBN 228578)
rlee@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, CA 94607
Telephone: 510.808.2000
Facsimile: 510.444.1108

Attorneys for Defendants
CITY OF FREMONT, CRAIG STECKLER,
ROBERT NELSON, CHARLES UHLER, and CURTIS CODEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP BROOKS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF FREMONT, CRAIG STECKLER, ROBERT NELSON, CHARLES UHLER, CURTIS CODEY, and Does 1-20, Inclusive,<br><br>    Defendants. | CASE NO. C 07-06458 JSW<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS (FRCP 12(b)(6))**<br><br>Date: April 18, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom 2, 17th Floor<br><br>The Hon. Jeffrey S. White<br><br>Complaint Filed: November 26, 2007 |

# TABLE OF AUTHORITIES

**CASES**

*Arendell v. Auto Parts Club, Inc.*
   29 Cal. App. 4th 1261 (Ct. App. 1994) .................................................................. 15

*Becerra v. County of Santa Cruz,*
   68 Cal. App. 4th 1450 (Ct. App. 1998) .................................................................. 16

*Brooks v. On Call Employee Solutions,*
   No. 07-CV-0162-H (POR), 2007 U.S. Dist. LEXIS 65540 (S. D. Cal.
   September 4, 2007) ................................................................................................ 11

*Clegg v. Cult Awareness Network,*
   18 F.3d 752 (9th Cir. 1994) ..................................................................................... 6

*Debro v. San Leandro Unified Sch. Dist.,*
   No. C-99-0676 VRW, 2001 U.S. Dist. LEXIS 17388
   (N.D. Cal. October 11, 2001) ................................................................................ 12

*Edwards v. U.S. Fidelity & Guarantee Co.,*
   848 F. Supp. 1460 (N.D. Cal. 1994) ...................................................................... 14

*Fiol v. Doellstedt,*
   50 Cal. App. 4th 1318 (Ct. App. 1996) .................................................................... 9

*Ivey v. Board of Regents of the University of Alaska,*
   673 F.3d 266 (1982) ............................................................................................... 10

*Janken v. GM Hughes Electronics,*
   46 Cal. App. 4th 55, 63-64 (1996) ............................................................. 6, 8, 9, 10

*Jones v. The Lodge at Torrey Pines Partnership,*
   No. S151022, 2008 Cal. LEXIS 2504 (Cal., March 3, 2008) ................................ 10

*Livitsanos v. Superior Court,*
   2 Cal. 4th 744 (1992) ........................................................................................ 13-14

*Matthews v. Superior Court,*
   34 Cal. App. 4th 598 Ct.App. (1995) ....................................................................... 9

*McCauley v. Stanford Univ. Med. Ctr.,*
   No. C 07-01784 JF (HRL), 2007 U.S. Dist. LEXIS 54050
   (Cal. N.D. July 17, 2007) ......................................................................................... 6

*Morgan v. Regents of University of Cal.,*
   88 Cal. App. 4th 52 (Ct. App. 2000) ........................................................................ 8

*Mory v. City of Chula Vista,*
   No. 06CV1460, 2008 U.S. Dist. LEXIS 9868
   (S.D. Cal. February 11, 2008) ................................................................................ 12

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS (FRCP 12(b)(6))     [C 07-06458 JSW]
1072354.1

i

*Nunn v. State of California*,
 35 Cal. 3d 616 (1984) .................................................................................. 15-16

*Reno v. Baird*,
 18 Cal. 4th 640 (1998) ...................................................................................... 10

*Semore v. Pool*,
 217 Cal. App. 3d 1087 (Ct. App. 1990) ............................................................ 14

*Soares v. City of Oakland*,
 9 Cal. App. 4th 1822 (Ct. App. 1992) ............................................................... 14

**STATUTES**

28 U.S.C. § 1441(b) ................................................................................................. 1

California Workers' Compensation Law. ............................................................... 14

**OTHER AUTHORITIES**

California Code of Regulations, title 2, section 7287.9(b)(1) ................................. 8

U.S. Constitution Fourth Amendment .................................................................. 12

Fed. R. Civ. Proc. Rule 12(b)(6) ........................................................................ 5, 10

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. LEGAL ARGUMENT ........................................................................................... 1

    A. Plaintiff Has Not Pled Sufficient Facts to State a Claim for Racial Harassment Under FEHA Against Captain Nelson ................................... 1

    B. Plaintiff Has Not Pled Sufficient Facts to State a Claim for Racial Harassment Under FEHA Against Chief Steckler ..................................... 3

    C. Plaintiff's New "Aiding and Abetting" Contention Must Fail ................. 4

    D. Chief Steckler and Captain Nelson are Entitled to Immunity for Their Discretionary Personnel Decisions ............................................................ 5

    E. Plaintiff's Federal Claims Under Sections 1983 And 1981 Against Steckler and Nelson Must Fail For Failure To Allege Actionable Disparate Treatment Different From Others Similarly Situated ................................. 6

    F. Chief Steckler and Captain Nelson Should be Granted Qualified Immunity ........... 8

    G. Plaintiff's Intentional Infliction Of Emotional Distress Claim ("IIED") Against All Defendants Must Be Dismissed ............................................... 9

        1. Plaintiff Fails to Plead "Outrageous" Conduct ................................. 9

        2. Plaintiff's IIED Claim is Also Preempted by Workers' Compensation Law ............ 9

    H. Plaintiff's Negligent Infliction of Emotional Distress Claim ("NIED") Against All Defendants Is Barred ............................................................ 10

        1. Plaintiff Fails to Plead the Elements of an NIED Claim ................. 10

        2. An Intentional Act Cannot Give Rise to an NIED Claim ................ 10

        3. Plaintiff Misunderstands the Doctrine of Worker's Compensation Exclusivity With Respect to Negligence Claims ....................... 10

    I. Plaintiff's Pleaded Facts Do Not Overcome The Immunities Applicable To Their NIED And IIED Causes of Action ............................ 11

III. CONCLUSION ................................................................................................... 12

I.  INTRODUCTION

Plaintiff's opposition is completely unavailing and misses the point. Whether plaintiff believes he is making a "courageous stand" against Caucasians in the Fremont Police Department makes no difference on the issue of whether the individual defendants in this lawsuit must face personal liability. It must be noted that *all* of the racially offensive conduct alleged by plaintiff *falls squarely outside the statute of limitations.* Indeed, plaintiff has already stipulated to dismiss two defendants with prejudice – Charles Uhler and Curtis Codey – based on the statute of limitations. Despite plaintiff's concession that his claims against Codey and Uhler are time-barred, plaintiff nevertheless continues to place their alleged conduct at the center of his lawsuit. This is not surprising, as there is *no other racially offensive conduct* attributable to *any other defendant*, and none that falls within the applicable statutes of limitations.

The question for the Court on this motion is not what plaintiff alleges against Codey and Uhler. The question raised by Chief Steckler is what conduct did *he* allegedly engage in that should cause *him* to face personal liability? Captain Nelson raises a similar question. What is Captain Nelson alleged to have done that creates personal liability for him under state and federal civil rights statutes?

Defendants understand and accept the liberal pleading standards applicable to a Rule 12(b)(6) motion. Here, plaintiff has not met these standards with respect to his claims against the individual defendants. Their motions to dismiss must be granted.

Finally, plaintiff mischaracterizes this motion as a "concession" on the part of the City that his claims are somehow otherwise valid. Plaintiff is wrong, as the City did not and does not make this concession. Defendants have simply focused their motions on the key pleading defects in the Complaint.

As set forth below, each of defendants' motions should be granted.

II. LEGAL ARGUMENT

    A.    **Plaintiff Has Not Pled Sufficient Facts To State A Claim For Racial Harassment Under FEHA Against Captain Nelson**

Plaintiff's hyperbole aside, he mentions Captain Nelson only twice in the Complaint. First, he alleges that, although plaintiff was not investigated or counseled, he "later became aware

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS (FRCP 12(b)(6))    [C 07-06458 JSW]
1072354.1

1

that he was being carefully scrutinized." (Complaint, ¶ 58.) There are no factual allegations indicating what Captain Nelson did in this regard. Captain Nelson is mentioned along with six other individuals who allegedly "scrutinized" plaintiff carefully. (Compl., ¶ 58.)

The Complaint contains only one other sentence regarding Captain Nelson: "This also following a claim Plaintiff had filed with the FEHA regarding harassment Plaintiff was receiving from defendant NELSON in relation to his injury." (Compl., ¶ 73.) There are no facts alleged suggesting what constitutes the "harassment" allegedly perpetrated by Captain Nelson.

These allegations are plainly insufficient to hold Captain Nelson personally liable under a racial harassment theory. In *Janken v. GM Hughes Electronics*, the Court explained the difference between "harassment" and "discrimination". 46 Cal. App. 4th 55, 63-64 (1996). "The exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment . . . . Making a personnel decision is conduct of a type fundamentally different from the type of conduct that constitutes harassment." *Id.* (emphasis added). Harassment claims are based on a type of conduct that is avoidable and unnecessary to job performance, such as use of racial slurs, derogatory drawings, physically interfere with freedom of movement, etc. in order to carry out the legitimate objectives of personnel management. *Id.* at 64-65.

Here, there is not one allegation that could possibly support a "harassment" claim against Captain Nelson. In fact, plaintiff makes no factual allegations whatsoever, and merely offers conclusory adjectives. (*E.g.*, ¶ 38 (plaintiff learned he was being "carefully scrutinized"); ¶ 73 (plaintiff was receiving "harassment").) These conclusions are insufficient as a matter of law. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (when ruling on a 12(b)(6) motion, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged"); *McCauley v. Stanford Univ. Med. Ctr.*, No. C 07-01784 JF (HRL), 2007 U.S. Dist. LEXIS 54050, *4 (N.D. Cal. July 17, 2007).

Defendants understand the liberal "notice" pleading standard applicable to federal complaints. But plaintiff's Complaint does not meet this standard with respect Captain Nelson.

Plaintiff should be required to state specifically what Captain Nelson allegedly did to him, so that Captain Nelson might have some notice of what is being accused of in this lawsuit.

### B. Plaintiff Has Not Pled Sufficient Facts To State A Claim For Racial Harassment Under FEHA Against Chief Steckler

Plaintiff's Complaint against Chief Steckler is similarly deficient. There are remarkably few factual allegations against Chief Steckler. Plaintiff's opposition brief, in large part simply cuts and pastes whole paragraphs from the Complaint -- most of which are mere conclusions and innuendo, and argues that the allegations give rise to an "inference" against Chief Steckler. (Opposition Brief, p. 12, lines 18-20.)

Plaintiff's Complaint mentions Chief Steckler in only five instances:

- In 2003, Chief Steckler (along with several others) "carefully scrutinized" plaintiff (¶ 58);
- In 2003, Chief Steckler received an email from a member of the City's Chamber of Commerce, accusing plaintiff of racial profiling. A Sergeant convinced the citizen not to file a complaint (¶ 54);
- In 2003, Chief Steckler declined to investigate plaintiff's complaint about having to submit to a fitness for duty evaluation, stating to plaintiff that the reasons for his fitness for duty evaluation were rumors of alcohol abuse, drugs, steroid use and gambling (¶ 64);
- In June 2006, Chief Steckler gave away commemorative pens, but plaintiff was on vacation and did not receive his. Plaintiff did not receive his commemorative pen until later (¶ 75); and
- In November 2006, plaintiff claimed that a Sergeant had blocked his movements. (¶ 77.) Plaintiff received an email from Chief Steckler advising that the Chief had authorized an internal affairs investigation into the matter. (¶ 79.)

As with Captain Nelson, the allegations at issue do not rise to actionable "harassment" under *Janken*. These allegations amount to acts that stem from discretionary, personnel management actions -- not the type of pervasive, derogatory comments or behavior that give rise to a hostile working environment under FEHA. *See* California Code of Regulations, title 2,

DEFENDANTS' REPLY BRIEF ISO MOTION TO DISMISS (FRCP 12(b)(6))   [C 07-06458 JSW]
1072354.1

3

section 7287.9(b)(1); *Janken,* 46 Cal. App. 4th at 64-65.

Plaintiff's conclusions, such as "harassment" and "careful scrutiny" are insufficient. Chief Steckler is entitled to know what it is he is alleged to have done that could possibly subject him to personal liability. Here, the allegations in 2003 are all well outside the statute of limitations. *See Morgan v. Regents of University of Cal.,* 88 Cal. App. 4th 52, 63 (Ct. App. 2000). Further, none of the allegations could possibly give rise to personal liability for "harassment," whether treated individually or collectively. *See Janken,* 46 Cal. App. 4th at 64-65.

It is important to note that plaintiff's allegations that mention Chief Steckler, in many instances, facially reveal no wrongdoing. For example, plaintiff's Complaint alleges that Chief Steckler received an email from a citizen. (¶ 54.) Plaintiff goes on to complain about a Sergeant, but plaintiff makes no complaints about the Chief.

In the last allegation, plaintiff complains that the Chief ordered an internal affairs investigation. (Compl., ¶79.) As stated above, this is precisely the sort of discretionary management decision that cannot reasonably form the basis for a "harassment" claim. *See Janken,* 46 Cal. App. 4th 55, 63-64. But what's more, this allegation illustrates an example of something that could not possibly give rise to liability: initiating an investigation after plaintiff complains! It is noteworthy that plaintiff earlier appears to claim that Chief Steckler committed wrongdoing by *not* investigating his complaint in 2003. Plaintiff cannot have it both ways.

At bottom, plaintiff should be required to plead sufficient facts, within the statute of limitations, such that Chief Steckler can be apprised of the basis of the lawsuit against him.

**C.   Plaintiff's New "Aiding and Abetting" Contention Must Fail**

Plaintiff makes a new claim in his opposition that is not mentioned in the Complaint. Plaintiff contends that Chief Steckler and Captain Nelson "aided and abetted" the wrongful conduct. (Opp. Brief, p. 12, lines 18-19). This claim must fail for three reasons. First, plaintiff did not make this claim in his Complaint. If he thinks he can assert an aiding and abetting claim with respect to either Chief Steckler or Captain Nelson, the motion to dismiss must be granted, and he should be required to plead this claim.

Second, aiding and abetting requires knowledge and "concerted wrongful action" or

"substantial assistance or encouragement" of the wrongful conduct. *Janken*, 46 Cal. App. 4th at 78. There are absolutely no facts alleged that Chief Steckler or Captain Nelson substantially assisted or encouraged other individuals' harassment of plaintiff. For this second reason, this new contention must fail.

Finally, mere inaction by a non-harassing supervisor does not constitute aiding and abetting. *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1327 (Ct. App. 1996). Here, there are no facts alleged that Chief Steckler or Captain Nelson engaged in any conduct that might constitute "harassment" under the FEHA.

The cased cited by plaintiff, *Matthews v. Superior Court*, 34 Cal. App. 4th 598 (Ct. App. 1995), is inapposite to this case. First, *Matthews* is a sexual harassment case. In *Matthews*, the plaintiff endured verbal harassment, including sexual advances and lewd, vulgar and lascivious comments, and physical sexual harassment, including brushing and rubbing against plaintiff's person, from his direct supervisors and co-workers. *Id.* at 600. Plaintiff sought the assistance of his employer's administrative supervisor, who immediately telephoned plaintiff's supervisors and told them plaintiff had accused them of sexual harassment; thereafter, plaintiff was subjected to the "silent treatment" and increased harassment by his co-workers. *Id.* at 600-01. In this context, the Court found that an individual is a "person" who can be subject to liability for sexual harassment under FEHA, that plaintiff had sufficiently alleged that his direct supervisors <u>personally participated</u> in acts which constituted unlawful sexual harassment, and that the other defendants aided or abetted in the proscribed acts. *Id.* at 599-601 (emphasis added).

Here, because plaintiff has not alleged aiding and abetting (and there are no facts alleged that would support this new theory), and cannot show that Chief Steckler or Captain Nelson personally participated in any proscribed acts that rise to the level of racially harassing conduct, the aiding and abetting argument must be rejected.

**D.    Chief Steckler And Captain Nelson Are Entitled To Immunity For Their Discretionary Personnel Decisions**

Plaintiff has all but ignored the immunity defenses at issue in this motion. Chief Steckler and Captain Nelson are each immune for their discretionary personnel actions under California

law.[1]

Plaintiff misses the point about *Caldwell*. Defendants agree that there is no immunity for "harassment." But the point is that plaintiff has not pled any facts suggesting that either Chief Steckler or Captain Nelson committed any actionable "harassment" against plaintiff *at all*. Rather, the complaints, such as initiating a fitness for duty examination, or initiating (or declining to initiate) a personnel investigation, are classic supervisory decisions. They do not facially meet the "harassment" standard in *Janken*. They are management decisions, just like a decision not to renew a contract, for which the individuals were held immune in *Caldwell*. See also *Jones v. The Lodge at Torrey Pines Partnership*, No. S151022, 2008 Cal. LEXIS 2504 (Cal., March 3, 2008) (the Court relied on its rationale in *Reno v. Baird*, 18 Cal. 4th 640 (1998), holding that individual managers are not subject to personal liability for retaliation claims and explaining that to impose individual liability for retaliation claims is contrary to the Legislative intent and inevitably creates a conflict for managers who might face personal liability for normal personnel decisions). Here, the acts alleged are inherently discretionary within the scope of Chief Steckler and Captain Nelson's authority and because plaintiff fails to plead facts overcoming defendants' immunity, this claim must be dismissed.

### E. Plaintiff's Federal Claims Under Sections 1983 And 1981 Against Steckler And Nelson Must Fail For Failure To Allege Actionable Disparate Treatment Different From Others Similarly Situated

Plaintiff's section 1983 and 1981 claims must fail because he has not pled facts that either Chief Steckler, or Captain Nelson, intentionally discriminated against plaintiff or treated others more favorably who were similarly situated to plaintiff. Again, in ruling on a Rule 12(b)(6) motion, the Court accepts as true all material allegations *except for* "conclusory allegations" and "unreasonable inferences." *Ivey v. Board of Regents of the University of Alaska*, 673 F.3d 266, 268 (1982) (vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss); *Brooks v. On Call Employee Solutions*, No. 07-

---

[1] They are also entitled to qualified immunity on the federal civil rights claims, and this defense is discussed *infra*.

CV-0162-H (POR), 2007 U.S. Dist. LEXIS 65540, *5 (S. D. Cal. September 4, 2007) (on a motion to dismiss, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels or conclusions, or a formulaic recitation of the elements of a cause of action). Here, plaintiff asks the Court to simply assume that Chief Steckler and Captain Nelson's conduct were racially motivated, without setting forth any facts showing how defendants intentionally discriminated against plaintiff and treated plaintiff differently from others <u>similarly situated</u>.

Plaintiff cites four examples in an attempt to show that he was treated differently from other officers, but a closer look at these examples show that they actually provide legitimate reasons for the actions taken against plaintiff. In one example, plaintiff alleges that he was subjected to informal investigations and remedial training as a result of two citizen complaints made against him. (Compl., ¶s 53, 54.) One citizen complaint alleged stalking by plaintiff and the other complaint accused plaintiff of racial profiling. (Compl., ¶s 53, 54.) Both informal investigations of plaintiff were conducted by Sergeant Tajima-Shadle, plaintiff's supervisor at that time. (Compl., ¶s 53, 54.) Plaintiff argues that when a Caucasian colleague, Officer Zambonin, was criticized for his "demeanor" by a citizen in a newspaper article, Zambonin was not only not investigated, but Chief Steckler came to his defense. (Compl., ¶ 56.) However, these incidents are facially distinguishable -- citizen complaints of officer stalking and racial profiling are arguably more serious than comments about alleged "demeanor"; the department arguably has every right to investigate conduct it deems serious. Furthermore, these informal investigations were initiated by Sergeant Tajima-Shadle, not Chief Steckler or Captain Nelson.

The second example centers upon a fitness for duty evaluation in August of 2003. (Compl., ¶s 63, 64.) Plaintiff argues that no other officer, except for him, was sent to fitness for duty exams absent excessive force complaints, etc. (Opp. Br., p. 6 lines 2-4.) However, plaintiff's own Complaint provides a laundry list of legitimate reasons why he was evaluated: plaintiff was the subject of two investigations from his previous shift, an incident with Sergeant O'Connell, and observations from Sergeants Uhler and Lanier -- all reflecting department management's concern about his capacity to perform his duties. (Compl., ¶ 63.)

In a third example, Plaintiff argues that Chief Steckler failed to timely present him with his commemorative pen for 10 years of service, but that he made efforts to present pens to everyone else. (Compl., ¶ 75.) However, plaintiff himself provides two explanations: he admits that he had chosen to take the day off on the same day that the pens were being presented and that Chief Steckler said a secretary "had dropped the ball." (Compl., ¶ 75.)

In a fourth example, plaintiff argues that he was questioned about his misuse of on-duty exercise time, but that other officers were not similarly scrutinized. However, plaintiff admits that other officers had been counseled for sleeping during their exercise time. (Compl., ¶ 76.) Further, there is no allegation that either Chief Steckler or Captain Nelson had anything to do with this incident.

None of the above examples show disparate conduct; in fact, in most examples, plaintiff himself provides legitimate reasons why he was being reprimanded or investigated. Further, even if these incidents somehow reflect disparate treatment, there is no indication whatsoever that Captain Nelson was somehow involved. As such, these claims must be dismissed.

F.   **Chief Steckler And Captain Nelson Should Be Granted Qualified Immunity**

Plaintiff's argument is unavailing, as both of these officers should be entitled to qualified immunity. As stated above, plaintiff fails to plead facts showing how Chief Steckler or Captain Nelson violated any clearly established statutory or constitutional rights. *See Mory v. City of Chula Vista*, No. 06CV1460, 2008 U.S. Dist. LEXIS 9868, *23 (S.D. Cal. February 11, 2008). Whatever facts plaintiff does allege are acts performed within Chief Steckler and Captain Nelson's discretionary functions, which are squarely covered under qualified immunity for government officials. *See Debro v. San Leandro Unified Sch. Dist.*, No. C-99-0676 VRW, 2001 U.S. Dist. LEXIS 17388, at *5 (N.D. Cal. October 11, 2001).

Further, Plaintiff erroneously contend that it would be premature for the Court to determine whether Chief Steckler and Captain Nelson are entitled to qualified immunity at this stage of the proceedings. (Opp. Br., p. 15.) In *Saucier v. Katz*, a suit against a police officer for use of excessive force under the Fourth Amendment, the U.S. Supreme Court's holding is on point:

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an 'entitlement not to stand trial or face the other burdens of litigation.' The privilege is an immunity from suit rather than a mere defense to liability....As a result, 'we repeatedly have stressed the importance of resolving immunity questions at the *earliest possible stage in litigation.*'" 533 U.S. 194, 201 (2001) (emphasis added).

Here, the acts alleged against Chief Steckler and Captain Nelson are objectively discretionary acts taken within the scope of their management roles. Because plaintiff does not and cannot set forth facts to overcome defendants' right to immunity, this claim must be dismissed.

### G. Plaintiff's Intentional Infliction Of Emotional Distress Claim ("IIED") Against All Defendants Must Be Dismissed

#### 1. Plaintiff Fails to Plead "Outrageous" Conduct

Plaintiff cannot show that Chief Steckler or Captain Nelson's individual conduct rises to the level of "outrageous" behavior for the purposes of an IIED claim. The cases cited by plaintiff are inapplicable because they were decided in the sexual harassment context, standing for the proposition that sexual harassment, if properly pled, meet the "outrageous" element for an IIED claim. Here, sexual harassment is not alleged. Accordingly, this claim must be dismissed.

#### 2. Plaintiff's IIED Claim is Also Preempted by Workers' Compensation Law

Plaintiff's opposition briefly points to a recognized exception to the law regarding preemption for employee injuries caused by an employer's IIED. (Opp. Br., p. 16-17.) This exception permits employees to sue employers for IIED, only where the conduct alleged contravenes fundamental public policy, or otherwise "exceeds the risks inherent in the employment relationship." *Livitsanos v. Superior Court*, 2 Cal. 4th 744, 754 (1992). As the Supreme Court emphasized in *Livitsanos*:

> the proposition that intentional or egregious employer conduct is necessarily outside the scope of the workers' compensation scheme is erroneous....Even intentional "misconduct" may constitute a "normal part of the employment relationship." Even if such

> conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions. 2 Cal. 4th at 753.

Thus, injuries caused by disciplinary proceedings, internal investigations, criticisms of work practices, poor performance evaluations, not being offered another allegedly better position, recommendation against a pay raise, and the like, are preempted, even if characterized by adjectives such as "outrageous." The exceptions to workers' compensation law must be narrowly construed. *Soares v. City of Oakland*, 9 Cal. App. 4th 1822, 1830 (Ct. App. 1992). For these reasons, plaintiff's IIED claim must be dismissed as a matter of law without leave to amend.

### H. Plaintiff's Negligent Infliction Of Emotional Distress Claim ("NIED") Against All Defendants Is Barred

#### 1. Plaintiff Fails to Plead the Elements of an NIED Claim

With respect to plaintiff's negligent infliction of emotional distress claim, plaintiff concedes that he failed to plead the elements of the claim. (Opp. Br., p. 16, lines 19-20.) For this reason alone, this claim must be dismissed.

#### 2. An Intentional Act Cannot Give Rise to an NIED Claim

Plaintiff completely fails to address defendants' argument that conduct that is inherently "intentional" (such as the conduct alleged here -- intentional discrimination and harassment), cannot form the basis for an NIED claim. *See Semore v. Pool*, 217 Cal. App. 3d 1087, 1103-04 (Ct. App. 1990); *Edwards v. U.S. Fidelity & Guarantee Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal. 1994). For this additional reason, this claim must be dismissed.

#### 3. Plaintiff Misunderstands the Doctrine of Worker's Compensation Exclusivity With Respect to Negligence Claims

Plaintiffs' opposition reveals a fundamental misunderstanding regarding the exclusivity of California Workers' Compensation Law. Plaintiffs' Sixth Cause of Action is for NIED. The Seventh Cause of Action is for IIED. As explained above, Plaintiff's presentation focuses only on whether defendants' alleged behavior contravenes public policy and falls outside the boundaries of normal workplace conduct. (Opp. Br., p. 16-17.) This analysis – whether workplace conduct "exceeds the risk inherent in the employment relationship" – *applies only to the Seventh Cause of Action*, for IIED. *This analysis does not apply to negligence.*

*Arendell v. Auto Parts Club, Inc.*, 29 Cal. App. 4th 1261, 1265 (Ct. App. 1994) succinctly explains the law and how to classify injuries allegedly suffered by employees: First, there are injuries caused by employer negligence. *"These injuries are subject to workers' compensation exclusivity."* *Id.* (emphasis added). The issue does not require any further analysis. Second, there are injuries caused by "ordinary employer conduct that intentionally, knowingly or recklessly harms an employee, for which the employee may be subject to extra compensation . . . ." "These are *also* subject to workers' compensation exclusivity, but the employee is entitled to a 50% increase in compensation if the injury results from the employer's 'serious and willful misconduct.'" *Id.* (emphasis added). Third, there are certain types of "*intentional* employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought. Intentional conduct is beyond the compensation bargain if it could not be considered a normal risk of employment or is contrary to fundamental public policy." *Id.* (emphasis added). Plaintiff has focused on the third analysis, which simply has no application to his NIED claim. As such, this claim must be dismissed.

I. **Plaintiff's Pleaded Facts Do Not Overcome The Immunities Applicable To Their NIED And IIED Causes of Action**

In response to defendants' claim of immunity under the California Torts Claims Act, the case cited by Plaintiff, *Nunn v. State of California*, 35 Cal. 3d 616 (1984), is not on point and in part, actually supports defendants' position. In *Nunn*, the executrix of the estate of a private security guard who was shot while on duty brought a wrongful death action against the state, the head of the Bureau of Collection and Investigative Services, and a community college district. The Court held that defendants state and bureau's decision to delay promulgation of the regulations governing firearms training for security guards constituted *"discretionary" quasi-legislative activity* protected by the Act. *Id.* at 624 (emphasis added). However, the facts here deal with discretionary personnel decisions, not legislative decisions. Plaintiff's attempt to analogize defendants' acts to those that are "operational" in nature (as opposed to discretionary functions) is not persuasive. Clearly, Plaintiff's allegations against the City, Chief Steckler and Captain Nelson all relate to discretionary personnel actions (or lack thereof) taken based on their

1  supervisory roles. As such defendants are entitled to immunity from these claims.

2       With respect to defendant district, the *Nunn* Court held that as a matter of law, the Complaint failed to plead facts to impose a *statutory* liability on the part of the district, and thus, the district was immune from liability for alleged *negligent* administrating of its testing procedure. *Id.* at 626. In other words, unless there is a specific statute which operates to impose tort liability upon a public entity, no such liability can exist. *See Becerra v. County of Santa Cruz*, 68 Cal. App. 4th 1450, 1457 (Ct. App. 1998). For this reason, Plaintiff's NIED claim against the City must also be dismissed.

### III.  CONCLUSION

For all the foregoing reasons, Defendants City, Chief Steckler and Captain Nelson respectfully requests that the Court grant its motions to dismiss.

Dated: March 18, 2008            MEYERS, NAVE, RIBACK, SILVER & WILSON


By: _____/s/_____
   Arthur A. Hartinger, Esq.
   Reichi Lee, Esq.
   Attorneys for Defendants
   CITY OF FREMONT, CRAIG STECKLER,
   ROBERT NELSON, CHARLES UHLER,
   CURTIS CODEY