IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PHILLIP BROOKS,

    Plaintiff,

  v.

CITY OF FREMONT, et al.,

    Defendants.

No. C 07-06458 JSW

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Now before the Court is the motion to dismiss filed by defendants City of Fremont ("City"), Craig Steckler ("Chief Steckler"), and Robert Nelson ("Captain Nelson") (collectively, "Defendants"). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby GRANTS Defendants' motion to dismiss.

**BACKGROUND**

Plaintiff Phillip Brooks ("Brooks") is currently employed by the City as a police officer. He brings this employment discrimination action against the City, Chief Steckler, and Captain Nelson, alleging that he has been discriminated against and harassed based on his race.

Brooks alleges that beginning in 1999, supervisors other than Chief Steckler and Captain Nelson closely scrutinized his work and reviewed his performance unfavorably. (Compl., ¶¶ 13-19.) Two officers told Brooks that they had overheard Curtis Codey ("Codey"), who Brooks originally named as a defendant but later dismissed, refer to Brooks as a "F\*\*king black idiot." (*Id*., ¶ 22.) In July of 1999, Codey gave Brooks a negative performance evaluation and

recommended that Brooks not be given a regularly scheduled pay rase. (*Id.*, ¶ 24.) However, six months later, Codey gave Brooks a better performance evaluation and recommended that Brooks receive a pay increase. (*Id.*, ¶ 26.)

In July of 2000, Brooks started working the graveyard shift under the supervision of then Sergeant Clarissa Lew ("Sergeant Lew"). (*Id.*, ¶ 27.) During this shift, Claudia Anderson ("Anderson"), a Caucasian dispatcher sent him to more involved or dangerous incidents, was rude to him, would sometimes delay giving him important information, failed to give him timely welfare checks, and delayed his meal times. (*Id.*, ¶¶ 28-39.) Sergeant Lew failed to remedy Anderson's poor treatment of Brooks and blamed Brooks for his problems with Anderson in a performance evaluation. (*Id.*, ¶¶ 40-41.) Anderson's treatment of Brooks was never investigated. (*Id.*, ¶ 42.)

In early 2002, Brooks tested for several specialized positions, but was only offered a position as a D.A.R.E. officer, which is the least desirable of all specialized positions. (*Id.*, ¶ 43.)

In August 2002, Brooks was assigned to work patrol on the day shift and worked under the direct supervision of Sergeant Dennis Moore ("Sergeant Moore"). Charles Uhler, who Brooks originally named as a defendant but later dismissed, was the Lieutenant and watch commander of this shift. (*Id.*, ¶ 44.) Over the next year, Brooks was the subject of three investigations, inappropriate counselings by Uhler, and numerous racial comments and jokes. (*Id.*) One officer commented about Brooks joining the shift, "Yeah, I guess we have to watch what we say in briefing now; I heard he is sensitive about racial jokes." (*Id.*) Another officer frequently said "Brooks is picking on the white boys again" and commented that he could avoid getting citizen complaints while on detail with Brooks because the citizen would focus on the "big black officer." (*Id.*, ¶¶ 46, 47.) These and other similar comments were made in front of Sergeant Moore and Lieutenant Uhler. (*Id.*, ¶ 47.) Brooks addressed these comments with Lieutenant Uhler, but Lieutenant Uhler was more concerned with Brooks' failure to engage in briefing bantering with the other officers and blamed Brooks for problems on the shift. (*Id.*, ¶ 49.) No investigation of the racial comments was conducted. (*Id.*, ¶¶ 49, 51.)

2

1  Brooks was the subject of three investigations conducted by Sergeant Sheila Tajima-
2  Shadle. (*Id.*, ¶¶ 52-57.)

3  Brooks "later became aware that he was being carefully scrutinized by various members
4  of the department's supervisors and administrative personnel," including by Chief Steckler and
5  Captain Nelson. (*Id.*, ¶ 58.)

6  In June of 2003, Brooks began to work a swing shift. He was then sent to a "Fitness for
7  Duty Evaluation," primarily based on incidents from his previous shift and a disagreement with
8  his new supervisor about how Brooks handled a situation with a drunk driver. (*Id.*, ¶¶ 61-64.)

9  Brooks told Chief Steckler that he felt as though he had been mistreated because of his
10 race and that he had been singled out and labeled because of race-based perceptions. Brooks
11 asked Chief Steckler to order an investigation into the facts surrounding his being ordered to
12 attend the evaluation, but he refused. (*Id.*, ¶ 64.) Chief Steckler told Brooks that he had been
13 sent to the evaluation based on certain incidents, as well as information that Brooks was abusing
14 alcohol, using steroids, and was a gambler. Chief Steckler laughed when Brooks advised him
15 that he did not drink. (*Id.*)

16 Brooks was ordered to complete another "Fitness for Duty Exam" in March of 2004.
17 (*Id.*, ¶ 69.)

18 Brooks sustained a work-related injury in June of 2004 and was either off work or on
19 light-duty until April of 2005. (*Id.*, ¶ 71.) Brooks filed a claim with FEHA alleging that
20 Captain Nelson harassed Brooks regarding his injury. (*Id.*, ¶ 73.)

21 In March of 2006, Brooks became the subject of an internal affairs investigation. (*Id.*, ¶
22 73.) Brooks initially received a four-day suspension, but the department offered to rescind this
23 suspension just before an arbitration hearing. (*Id.*)

24 In April of 2006, Brooks found a document entitled "The City of Oakland High School
25 proficiency exam" on his desk. The questions on the exam were directed at minorities,
26 specifically African-Americans. (*Id.*, ¶ 74.)

27 In October of 2006, Brooks was scheduled to receive a gift from the City to
28 acknowledge his ten years of service. The gift, which is usually a pen, is presented by Chief

3

1 Steckler. Chief Steckler did in fact present another officer with the pen, but did not present
2 Brooks with his pen until February 15, 2007. (*Id*., ¶ 75.) Chief Steckler claimed that his
3 secretary had dropped the ball. (*Id*.)

4 On November 13, 2006, Brooks was interrogated by two sergeants regarding his
5 supposed misuse of on-duty exercise time. (*Id*., ¶ 76.) One sergeant apparently believed
6 Brooks took too long in the shower. Brooks' exercise privileges were suspended pending an
7 investigation by a captain. Brooks is not aware of anyone else being treated in this way
8 regarding exercise time. Brooks advised the sergeants that he felt as though he was being
9 singled out and harassed. (*Id*.)

10 Sergeant Epps blocked Brooks' exit until Brooks put a time stamp on a tape that Brooks
11 had used to tape the interrogation. Brooks advised Sergeant Epps and the other sergeant present
12 in the interrogation that he planned to file an official complaint for being physically blocked.
13 (*Id*., ¶ 77.)

14 On December 18, 2006, Brooks received an email from Internal Affairs Sergeant
15 Mazzone advising him that Chief Steckler had directed that an internal investigation be
16 conducted regarding Brooks' claim that Sergeant Epps had blocked his movements. The email
17 also requested a copy of the tape Brooks made during the interrogation session, but did not
18 mention that there was any investigation into his claim of harassment. (*Id*., ¶ 79.) However, ten
19 days later, Brooks was handed a letter informing him that upon his request, the department was
20 conducting an internal affairs investigation into his claim against Sergeant Epps and his claim
21 of feeling harassed. (*Id*., ¶ 80.) On January 8, 2007, Sergeant Mazzone admitted that he was
22 looking into whether Brooks committed a violation of department rules by taping the
23 interrogation session. (*Id*., ¶ 85.)

24 On January 30, 2007, Brooks received another letter notifying him of a scheduled
25 interview to obtain information regarding his claim off being harassed, picked on, and being
26 held to a different standard. However, when his attorney served copies of Brooks' DFEH
27 complaints of racial discrimination and harassment on February 2, 2007, that interview was
28 cancelled. (*Id*., ¶ 86.)

4

1 On July 6, 2007, Brooks received another performance evaluation with some criticisms that indicated Brooks was being held to a different standard. Brooks submitted a rebuttal to this performance evaluation. (*Id*., ¶ 88.)

Based on the above allegations, Brooks asserts the following claims: (1) racial harassment under California Fair Housing and Employment Act, California Government Code §§ 12900, *et seq*. ("FEHA") against the City, Chief Steckler, and Captain Nelson; (2) racial discrimination under FEHA against the City only; (3) failure to provide a discrimination-harassment free workplace under FEHA against the City only; (4) denial of equal protection pursuant to 42 U.S.C. § 1983 ("Section 1983") against the City, Chief Steckler, and Captain Nelson; (5) denial of equal protection pursuant to 42 U.S.C. § 1981 ("Section 1981") against the City, Chief Steckler, and Captain Nelson; (6) negligent infliction of emotional distress against the City, Chief Steckler, and Captain Nelson; and (7) intentional infliction of emotional distress against the City, Chief Steckler, and Captain Nelson. Defendants now move to dismiss all of Brooks' claims against Chief Steckler and Captain Nelson and to dismiss his emotional distress claims against the City.

## ANALYSIS

**A.  Legal Standards Applicable to Motions to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The court, however, is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**B.  Defendants' Motion.**

Defendants move to dismiss all Brooks' claims against Chief Steckler and Captain Nelson. The Court will address each claim in turn.

5

### 1. Brooks' Racial Harassment Claim.

Defendants move to dismiss Brooks' racial harassment claim under FEHA on the grounds that Brooks' alleged facts do not constitute racial harassment. California law draws a distinction between discrimination and harassment claims. *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 62-63 (1996); *see also Reno v. Baird*, 18 Cal. 4th 640, 645-47 (1998) (summarizing *Janken* with approval and affirming *Janken's* delineation between harassment and discrimination). While individual supervisory employees may be at risk of liability for personal conduct constituting harassment under FEHA, they may not be held individually liable for personnel management decisions later considered to be discriminatory. *Janken*, 46 Cal. App. at 62-63. As the court explained in *Janken*, "the Legislature's differential treatment of harassment and discrimination [under FEHA] is based on the fundamental distinction between harassment as a type of conduct not necessary to a supervisor's job performance, and business or personnel management decisions – which might later be considered discriminatory – as inherently necessary to performance of a supervisor's job." *Id*. "Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Id*. at 63. Rather, "harassment consists of conduct outside of the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Id*. In contrast, "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." *Id.* at 64; *see also Valente-Hook v. Eastern Plumas Health Care*, 368 F. Supp. 2d. 1084, 1102-03 (E.D. Cal. 2005) (finding defendant's conduct, such as refusing to release a paycheck unless plaintiff discussed a fitness-for-duty test, fell within the scope of job duties necessary to business and personnel management, and thus, did not constitute harassment under FEHA).

Brooks contends that Defendants have conceded that his complaint states a claim for harassment because they have not moved to dismiss the claim as to the City and that individual supervisors may be liable for such harassment if they personally participate in or aid and abet the harassment. By not moving with respect to the City, Defendants have not conceded that Brooks sufficiently alleges any claims. Brooks fails to address how the conduct he complains of constitutes harassment, as opposed to discrimination, as set forth in *Janken*. With the exception of the race-related comments and jokes and the fabricated proficiency exam placed on Brooks' desk, all of the conduct of which Brooks complains consist of commonly necessary personnel management actions.[1] *See Janken*, 46 Cal. App. 4th at 64.

With respect to the allegations regarding the race-related comments and jokes and the fabricated proficiency exam, none of the incidents alleged were conducted by Chief Steckler or Captain Nelson. Brooks cannot hold Chief Steckler or Captain Nelson personally liable for alleged harassing comments made by other employees. *See Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) ("Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting. ... More specifically, a supervisor is not liable to third parties for the acts of his or her subordinates."); *Patterson v. Apple Computer, Inc.*, 2005 WL 2277005, *14 (N.D. Cal. Sept. 19, 2005) ("California courts have long held that a supervisor cannot be sued individually under FEHA for harassment by another employee, even where the plaintiff actually complains to the supervisor about the alleged harassment."). Accordingly, the Court finds that Brooks has not alleged facts that support holding Chief Steckler or Captain Nelson personally liable for harassment under FEHA. The Court thus GRANTS Defendants' motion to dismiss Brooks' harassment claim against Chief Steckler and Captain Nelson.

**2.     Brooks' Claims under Sections 1981 and 1983.**

Brooks brings a claim for denial of equal protection and for racial discrimination against Chief Steckler and Captain Nelson under Section 1983 and 1981. To state a claim under

---

[1] Brooks also alleges in a conclusory manner that Captain Nelson harassed him regarding a work-related injury, but does not allege any facts specifying what conduct Captain Nelson allegedly engaged in. The Court is not required to accept the legal conclusion that Captain Nelson harassed Brooks in the absence of any factual allegations from which this conclusion can reasonably be drawn. *See Clegg*, 18 F.3d at 754-55.

7

1  Section 1983 for denial of equal protection, Brooks must allege that he was denied equal
2  protection of the laws, "which is essentially a direction that all persons similarly situated should
3  be treated alike." *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *City*
4  *of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Moreover, Brooks must allege
5  that Chief Steckler and Captain Nelson acted with an intent or purpose to discriminate against
6  him based upon his membership in a protected class. *Id*. To state a claim under Section 1981,
7  Brooks must allege that "(1) he ... is a member of a racial minority; (2) the [Chief Steckler and
8  Captain Nelson] intended to discriminate against [him] on the basis of race; and (3) the
9  discrimination concerned one or more of the activities enumerated in the statute (i.e., the right
10 to make and enforce contracts, sue and be sued, give evidence, etc.)." *See Ennix v. Stanten*,
11 2007 WL 2462119, *8 (N.D. Cal. Aug. 28, 2007).

12 Moreover, "[u]nder Section 1983, supervisory officials are not liable for actions of
13 subordinates on any theory of vicarious liability." *Hanson v. Black*, 885 F.2d 642, 645-46
14 (9th9th Cir. 1989) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "A
15 supervisor may be liable if there exists either (1) his or her personal involvement in the
16 constitutional deprivation, or (2) a sufficient causal connection between the supervisor's
17 wrongful conduct and the constitutional violation." *Id.* (citing *Thompkins v. Belt*, 828 F.2d 298,
18 303-04 (5th Cir. 1987). Where there is no overt participation in the allegedly wrongful act,
19 supervisory liability can be established when the supervising officials implement "a policy so
20 deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force
21 of the constitutional violation.'" *Id.* (quoting *Thompkins*, 828 F.2d at 304); *cf. Munger v. City*
22 *of Glasgow*, 227 F.3d 1082, 1087 (9th Cir. 2000) ("The 'inadequacy of police training may
23 serve as the basis for § 1983 liability only where the failure to train amounts to deliberate
24 indifference to the rights of persons with whom the police come into contact.'") (quoting *City of*
25 *Canton v. Harris*, 489 U.S. 378, 388 (1989)).

26 Similarly, under Section 1981, supervisors may not be held vicariously liable for actions
27 of other employees. Rather, a plaintiff must allege facts which demonstrate "an affirmative link
28 to casually connect the actor with the discriminatory action." *Simpson v. Martin, Ryan,*

8

*Andrada, & Lifter*, 1997 WL 542701, *4 (N.D. Cal. Aug. 26, 1997) (finding "[a] supervisor's failure to prevent or remedy harassment is not an affirmative link making her personally liable").

Brooks' sole allegation against Captain Nelson is that he, among other supervisors and administrative personnel, "carefully scrutinized" Brooks.[2] (Compl., ¶ 58.) Such allegation, standing alone, fails to support an inference of intentional discrimination. Moreover, Brooks fails to allege that similarly situated employees were treated differently. Accordingly, the Court finds that Brooks fails to state a claim against Captain Nelson in his individual capacity under either Section 1981 or Section 1983 and thus dismisses these claim against him.

With respect to Chief Steckler, Brooks alleges that he "carefully scrutinized" Brooks as well. (Compl., ¶ 58.) Again, this allegation fails to support a claim under either Section 1981 or Section 1983.

Brooks further alleges that after he was ordered to attend a "Fitness for Duty Evaluation" in June of 2003, Brooks asked Chief Steckler to order an investigation as to why he was ordered to attend, but Chief Steckler refused. (*Id*., ¶ 64) Chief Steckler told him that he had been sent to the evaluation based on certain incidents, as well as information that Brooks was abusing alcohol, using steroids, and was a gambler. (*Id*.) Brooks has not alleged any facts that would show that Chief Steckler's refusal to order the investigation was based on an intent to discriminate against Brooks. Brooks similarly fails to allege facts showing that he was treated differently than other similarly situated employees. Notably, he has not alleged that other employees ordered to attend evaluations had requested Chief Steckler to conduct investigations of why they had been ordered to attend evaluations and that he initiated such investigations.

According to Brooks, three years later, Chief Steckler delayed four months giving him a pen in recognition of ten years of service. Chief Steckler claimed that his secretary had dropped

---

[2] As noted above, although Brooks also alleges that Captain Nelson harassed him regarding a work-related injury, the Court is not required to accept this legal conclusion in the absence of any supporting factual allegations. *See Clegg*, 18 F.3d at 754-55.

9

the ball. (Compl., ¶ 75.) Again, such allegations do not support an inference that the delay was based on an intent to discriminate against Brooks.

Finally, later in 2006, Brooks alleged that Chief Steckler directed that an internal investigation be conducted regarding Brooks' claim that a sergeant had blocked his movements, but did not address Brooks' claim of harassment. (Compl., ¶ 79.) However, Brooks further alleges that ten days later, Brooks was handed another letter, informing him that the department was conducting an investigation into his claim of feeling harassed. (*Id.*, ¶ 80.) Therefore, according to Brooks own allegations, his claim of being harassed was not ignored. Accordingly, such allegations do not support a claim that Chief Steckler intentionally discriminated against him.

The Court finds that Brooks has not alleged a sufficient causal connection between Chief Steckler's alleged wrongful conduct and any constitutional violation. Therefore, the Court GRANTS Defendants' motion to dismiss as to Brooks' Section 1983 and 1981 claims against Chief Steckler.

### 3. Brooks' Negligent Infliction of Emotional Distress Claim.

Defendants argue that Brooks' negligent infliction of emotional distress claim is premised on his allegations of intentional conduct. His negligent infliction of emotional distress claim merely incorporates factual allegations applicable to his other claims, which are all based on intentional conduct. "[A]n intentional act cannot give rise to a claim for negligent infliction of emotional distress." *Dayton v. Modesto Irrigation Dist.*, 2007 WL 4107904, * 13 (E.D. Cal. Nov. 16, 2007) (granting summary judgment on negligent infliction of emotional distress claim where the plaintiff's allegations in support of his negligence claim merely incorporate his prior claims for intentional discrimination). The court in *Dayton* noted that the plaintiff failed to argue how the defendants' *intentional conduct* could support a negligence claim and found that the plaintiff failed to present any facts which would implicate negligence of any kind by the defendants. *Id.*; *see also Edwards v. United States Fidelity and Guaranty Co.*, 848 F. Supp. 1460, 1466 (N.D. Cal. 1994) (plaintiff's claim negligent infliction of emotional distress claim

1  premised on defendants' rescission of her promotion and transfer was precluded as a matter of
2  law because the alleged conduct was intentional).

3  Similarly here, Brooks merely incorporates his prior factual allegations supporting his
4  claims for intentional discrimination into his claim for negligent infliction of emotional distress.
5  Upon review of his complaint, the Court finds that Brooks only alleges intentional, not
6  negligent, conduct. Accordingly, the Court dismisses Brooks's claim for negligent infliction of
7  emotional distress.

### 4       Brooks' Intentional Infliction of Emotional Distress Claim.

Defendants move to dismiss Brooks' intentional infliction of emotional distress ("IIED") claim against Chief Steckler, Captain Nelson, and the City. Defendants argue that Brooks' IIED claim against Chief Steckler and Captain Nelson fail because Brooks's allegations against them do not constitute "outrageous conduct." To state a claim for IIED, a plaintiff must allege: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Cole v. Fair Oaks Fire Dept.*, 43 Cal. 3d 148, 155 n.7 (1987). This tort imposes liability for "conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress." *Id.*

As the court held in *Janken*, where a plaintiff only pleads commonly necessary personnel management action, and thus fails to plead a claim for harassment, an IIED claim fails for similar reasons. *Janken*, 46 Cal. App. 4th at 80. "Managing personnel is not outrageous conduct beyond the bounds of human decency...." *Id*. The court thus held that simply pleading personnel management activity is insufficient to support an IIED claim, even if the plaintiff alleges that such activity was improperly motivated. Rather, "if personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id.*; *see also Romaneck v. Deutsche Asset Management*, 2005 WL 2171987, *4 (N.D. Cal. Sept. 6, 2005) (noting that other courts have followed *Janken* to hold that personnel

1  management activity, such as termination, for discriminatory or other improper reasons is
2  insufficient to rise to the level of outrageous conduct required for an IIED claim).

3        As the Court discussed above, Chief Steckler's and Captain Nelson's alleged conduct
4  simply consists of commonly necessary personnel management actions. Accordingly, Brooks
5  fails to allege conduct by these defendants that rise to the level of outrageous conduct required
6  to state an IIED claim. The Court thus GRANTS Defendants' motion to dismiss this claim
7  against Chief Steckler and Captain Nelson.

8        With respect to the City, Defendants argue that Brooks' claim is barred by the California
9  Tort Claims Act. "Sovereign immunity is the rule in California." *Sonoma AG Art, LLC v. Dept.*
10 *of Food and Agriculture*, 125 Cal. App. 4th 122, 125 (2004). California Government Code
11 section 815 "abolished all common law or judicially declared forms of liability for public
12 entities, except for such liability as may be required by the federal or state Constitution."
13 *Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405, 409 (1984). Consequently, "all
14 government tort liability must be based on a statute." *Id*. Brooks argues that he may bring his
15 IIED claim against the City because, pursuant to California Government Code section 815.2, a
16 public entity may be liable for the acts and omissions of its employees if the employees are
17 liable. However, the Court is dismissing the IIED claim against the Chief Steckler and Captain
18 Nelson. Therefore, Section 815.2 does not provide a basis upon which Brooks may bring an
19 IIED claim against the City. Accordingly, the Court GRANTS Defendants' motion to dismiss
20 Brooks IIED claim against the City as well.

21       **CONCLUSION**

22       For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss.
23 However, the Court HEREBY provides Brooks leave to amend to allege a factual basis for the
24 dismissed claims. Brooks shall file an amended complaint, if any, by May 30, 2008.
25 ///
26 ///
27 ///
28 ///

12

1  Defendants shall have twenty days thereafter to file their responsive pleading. The Court
2  HEREBY SCHEDULES the initial case management conference for July 11, 2008 at 1:30 p.m..
3  **IT IS SO ORDERED.**

5  Dated: May 5, 2008

                                            JEFFREY S. WHITE
                                            UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California